[F005322. Fifth Dist. Jan. 27, 1987.]

RIVER WEST, INC., et al., Plaintiffs and Appellants, v.
GEORGE W. NICKEL, JR., Defendant and Respondent.

1298

---

COUNSEL

Gibson, Dunn & Crutcher, John L. Endicott, Joel A. Feuer, Selvin & Weiner and Paul P. Selvin for Plaintiffs and Appellants.

Alschuler, Grossman & Pines, Melvyn B. Fliegel and Debra A. Stegura as Amici Curiae on behalf of Plaintiffs and Appellants.

Ball, Hunt, Hart, Brown & Baerwitz, Anthony Murray, Harmon M. Hitt, Paul R. Pearlson, Kronick, Moskovitz, Tiedemann & Girard and Lloyd Hinkelman for Defendant and Respondent.

---

OPINION

**WOOLPERT, Acting P. J.**—Plaintiffs appeal from a pretrial order disqualifying their counsel for conflict of interest. Some 27 to 30 years before the motion for disqualification was made, one of plaintiffs' attorneys represented an individual who now appears as a defendant in the present action. In both the old and new matters the litigation concerned water rights along the Kern River in the central valley. An issue before the trial court on the motion to

disqualify was whether the matters were "substantially related," a legal point of significance in attorney disqualification. The trial court found the matters to have the substantial relationship necessary for the disqualification of the attorneys.[1]

This litigation is a complex one with many parties; numerous attorneys have been involved to this point. At the time of the filing of the notice of motion to disqualify, plaintiffs' attorneys had already engaged in over 3,000 hours of litigation effort, costing their clients $387,000. Of particular significance to this appeal, the motion to disqualify was not made until 47 months after the moving party's answer was filed.

Although the trial court heard argument on whether the moving party unreasonably delayed seeking the disqualification and the effect of such delay, the court made no finding with respect to delay. Apparently the court decided once it found a substantial relationship existed, counsel should be disqualified.

On appeal, plaintiffs have abandoned any effort to challenge the substantial relationship finding.[2] Instead, their argument is that prejudicial delay in making the disqualification motion is a proper consideration in ruling on such a motion. On these facts, plaintiffs contend the court abused its discretion when it disregarded the extraordinary delay and effectively ended not only their attorneys' further participation in the case, but also made worthless the enormous amount of effort so far expended.

We will examine the confusing state of the law on the role of delay in disqualification matters. Specifically, we must consider whether the public's interest in preserving attorney-client confidentiality and trust in the bar is so great that if there exist grounds for disqualification based on a conflict of interest, questions regarding unreasonable delay and resulting prejudice become irrelevant. Or, to rephrase the query, once grounds exist for disqualification due to the successive representation of clients with adverse interests, is the appearance of impropriety a substantial enough concern to overcome

---

[1] The motion and order for disqualification were directed not only to the attorney, T. Keister Greer, who previously represented one of the defendants, but also cocounsel, the law firm of Kuhs and Parker, on a theory of vicarious disqualification.

[2] For appellate purposes, plaintiffs purport *not* to challenge the lower court's "substantially related" finding; however, their arguments frequently infer their counsel's prior work was not of significance to the current litigation and if there were confidences, time and disclosures have made them unimportant. Two days prior to oral argument in this appeal, T. Keister Greer received permission from this court to file an amicus brief. In that brief, Greer raised the substantial relationship issue which plaintiffs in turn attempted to urge at oral argument. However, because plaintiffs belatedly sought to challenge the trial court's substantial relationship finding, we will not review the merits of that claim.

practical or realistic questions of unreasonable delay and resulting preju-
duce?

## *The Motion*

On August 5, 1980, plaintiffs filed the present action seeking injunctive
and other relief against 12 named defendants for interference with plaintiffs'
water rights. On October 5, 1984, defendant George W. Nickel, Jr., moved
to disqualify plaintiffs' counsel Greer and the law firm of Kuhs and Parker
on grounds: "(1) Greer [was] acting adversely to Nickel, his former client,
with respect to the same matters at issue in his previous representation of
Nickel; (2) Greer [was] acting adversely to Nickel despite his previous receipt
of confidential communications from Nickel; (3) Greer's conduct [had]
created the appearance of impropriety; and (4) Kuhs & Parker [had] shared
Greer's information. Both Greer and Kuhs & Parker must be disqualified
on the basis of Rule 4-101, Rules of Professional Conduct, and California
case law."[3]

Plaintiffs opposed the disqualification motion with the following argu-
ments: (1) To the extent Greer represented Nickel approximately 30 years
earlier, his employment did not involve matters which were "substantially
related" to the issues in the present action; (2) Greer's representation of
corporate entities, of which Nickel was a shareholder, employee, officer or
director, did not amount to representation of Nickel as an individual; (3)
Nickel, by his conduct, consented to Greer's representation of plaintiffs; and
(4) Greer did not give any confidential information to cocounsel Kuhs and
Parker.

Both sides offered extensive declarations and exhibits in support of their
respective positions. Following a December 20, 1984, hearing on the motion,
the lower court ruled: "1. Issues exist in the litigation now pending before
this court in which T. Keister Greer (with the law firm of Kuhs and Parker)
represents the plaintiffs against the defendant, George W. Nickel, Jr. and
others, which are substantially related to issues involved in T. Keister Greer's
prior representation of Defendant, George W. Nickel, Jr., as a client and a
beneficiary of the Henry Miller Trust.

---

[3]California Rules of Professional Conduct, rule 4-101 provides: "A member of the State
Bar shall not accept employment adverse to a client or former client, without the informed
and written consent of the client or former client, relating to a matter in reference to which
he has obtained confidential information by reason of or in the course of his employment by
such client or former client."

All references hereafter to rules are to the California Rules of Professional Conduct unless
otherwise indicated.

"2. Confidential information acquired by T. Keister Greer during his prior representation of George W. Nickel, Jr., has been shared with attorney James R. Parker Jr., in the litigation now pending before this Court.

"3. Grounds exist for disqualifying T. Keister Greer and Kuhs and Parker from representing the plaintiffs in this action.

"4. The motion of defendant, George W. Nickel Jr., to disqualify T. Keister Greer and Kuhs and Parker is granted."

*Standard of Review*

■ Nickel contends the lower court's disqualification order should not be reversed if it is supported by substantial evidence, citing *Grove* v. *Grove Valve & Regulator Co.* (1963) 213 Cal.App.2d 646, 653-654 [29 Cal.Rptr. 150], and *Meehan* v. *Hopps* (1956) 144 Cal.App.2d 284, 287 [301 P.2d 10]. Both *Grove* and *Meehan* dealt with a conflict in the evidence supporting the court's determination. As the appellate court in *Meehan* pointed out, "it is for the trial court to evaluate the evidence." (*Meehan* v. *Hopps, supra,* at p. 287.)

Nevertheless, because of the importance of motions to disqualify counsel, appellate courts must carefully review the trial court's exercise of discretion. (See *Elliott* v. *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 567 [211 Cal.Rptr. 802]; *Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893, 903, fn. 7 [175 Cal.Rptr. 575].)

*"Substantially Related"*

In this case, the trial court found "[i]ssues exist in the litigation . . . which are substantially related to issues involved in T. Keister Greer's prior representation of Defendant, George W. Nickel, Jr., as a client and a beneficiary of the Henry Miller Trust."

The trial court's use of the words "substantially related" was a purposeful one. These words of art are a simple reference to the screening process used in identifying an impermissible conflict of interest in an attorney's representation of successive clients.

■ Under the "substantial relationship" test: "[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the

attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." (*T.C. & Theatre Corp.* v. *Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, 268-269.)

In *People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150 [172 Cal.Rptr. 478, 624 P.2d 1206], our state Supreme Court appeared to endorse the federal "substantial relationship" rule when it quoted a federal decision, *State of Ark.* v. *Dean Foods Products Co., Inc.* (8th Cir. 1979) 605 F.2d 380, 384, and noted: "[I]t was held that the ' "attorney-client relationship raises an irrefutable presumption that confidences were disclosed." ' Disqualification of the Attorney General was upheld because of his prior representation of a litigant; whether he 'did in fact receive confidential information is irrelevant, the policy considerations of the Code precluding that inquiry.' (*Id.,* p. 386.) The same doctrine was enunciated in *General Motors Corporation* v. *City of New York* (2d Cir. 1974) 501 F.2d 639, 648, and *Emle Industries, Inc.* v. *Patentex, Inc.* (2d Cir. 1973) 478 F.2d 562, 571. Also see Kramer, *Appearance of Impropriety* (1981) 65 Minn. L.Rev. 243, 255.)" (*People* ex rel. *Deukmejian* v. *Brown, supra,* 29 Cal.3d at pp. 156-157.)

In addition, however, the state Supreme Court noted its own longstanding, strict position on successive representation of adverse interests by quoting *Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564, 573-574 [15 P.2d 505]: " '[A]n attorney is forbidden to do *either* of two things after severing his relationship with a former cient. He may not do anything which will injuriously affect his former client in any [matter] in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.' " (*People* ex rel. *Deukmejian* v. *Brown, supra,* 29 Cal.3d at p. 155.)

A California appellate court first expressly applied the federal "substantial relationship" test in *Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483 [192 Cal.Rptr. 609]. In *Global,* the trial court denied a disqualification motion for lack of evidence that the attorney obtained confidential information during his previous employment. (*Id.* at p. 487.) The appellate court reversed. In considering whether the attorney had accepted employment adverse to his former client, the *Global* court reasoned: "When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confiden-

tial information is presumed. (See *People* ex rel. *Deukmejian* v. *Brown, supra,* 29 [Cal.] 3d at pp. 155-156.)

"This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' (*Developments in the Law: Conflicts of Interest in the Legal Profession, supra,* 95 Harv.L.Rev. 1244, 1318; accord: *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116-117 [293 P.788].)" (*Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d at p. 489.)

Therefore, in the usual case when the substantial relationship of the matters is established, the inquiry ends and the disqualification should be ordered. If it were otherwise, a weighing process would be inevitable. The rights of the former client would be lined up against those of the new client, perhaps to the detriment of both. The purpose of the substantial relationship test is to avoid such an inquiry.

### Relevance of Delay and Prejudice Claims

As a preface to our discussion of the relevance of delay in making disqualification motions, we must observe that the case law which discusses delay in seeking recusal involves disqualification of two kinds: (1) when it appears the attorney may be called as a witness in a case in which he or she is an advocate (attorney-witness); and (2) when a former client wants to stop the former attorney from presently representing an adverse interest (past representation). In the first instance, courts are concerned only with the possible appearance of impropriety when an attorney appears as an advocate and a witness in the same proceeding. In the second, and significantly more important matter, the attorney's confidential relationship with the former client is the troublesome issue. We further note the cases we will discuss do not always keep this distinction in mind when quoting precedents.

In *Earl Scheib, Inc.* v. *Superior Court* (1967) 253 Cal.App.2d 703, 706 [61 Cal.Rptr. 386], a past-representation case, the trial court denied a motion to disqualify on grounds the motion was filed "too late." The appellate court reversed the order because the matter had not been heard "on its merits." It recognized the former client could expressly or impliedly consent to the adverse representation. (*Id.* at p. 707.) However, the trial court's bald conclusion, "filed too late," was not a proper disposition of the complaint, even though the delay in filing the motion had prejudiced the new client. Mere delay was said to be irrelevant. (*Id.* at pp. 707, 709.)

The *Earl Scheib, Inc.* case purports to state a rule that laches is irrelevant. Yet, the court acknowledged federal cases which remind us the motion for disqualification is equitable in nature and reasonable diligence is required. (*Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal.App.2d at p. 709.) Because the delay in *Scheib* was only four months, the court distinguished the case before it from the four-year delay in *Milone* v. *English* (D.C. Cir. 1962) 306 F.2d 814, and the twenty-year delay in *Marco* v. *Dulles* (S.D.N.Y. 1959) 169 F.Supp. 622. Therefore, we can assume the court's reference to these cases indicated delay and prejudice might be relevant under other circumstances.

In *Kraus* v. *Davis* (1970) 6 Cal.App.3d 484, 491-492 [85 Cal.Rptr. 846], an appellate court interpreted *Earl Scheib, Inc.* in the following manner: "A client or former client may consent to an attorney's acceptance of employment which may be adverse to the client's interest. (Rules of Professional Conduct, rule 5 [52 Cal.2d at p. 897]; and see *Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal.App.2d 703, 707; *Grove* v. *Grove Valve & Regular Co., supra,* 213 Cal.2d 646, 652-653; and *Lessing* v. *Gibbons* (1935) 6 Cal.App.2d 598, 605-606 [45 P.2d 258].) Nevertheless, a waiver will not generally be presumed from mere delay in raising the objection (*Earl Scheib, Inc.* v. *Superior Court, supra,* 253 Cal.App.2d at pp. 707-709; but cf. *Gottwals* v. *Rencher* (1940) 60 Nev. 35, 57-60 [92 P.2d 1000; 98 P.2d 481, 486-487]); nor is the question of possible prejudice to the new client a relevant consideration if there is prejudice to the former client (*id.,* at p. 709)."

By 1979, the appellate court in *White* v. *Superior Court* (1979) 98 Cal.App.3d 51, 55-56 [159 Cal.Rptr. 278], ruled that a party seeking to challenge an attorney's qualification to represent an adversary party *must* proceed at the first reasonable opportunity and by proper motion to achieve that end. In *White,* the allegedly disqualified attorney had previously represented both parties during the preparation of their partnership agreement; now, he appeared for one of the partners in an action against the other. Counsel could become a witness; the moving party also argued some confidences would be disclosed.

In reaching its conclusion, the *White* court relied upon *Comden* v. *Superior Court* (1978) 20 Cal.3d 906 [145 Cal.Rptr. 9, 576 P.2d 971]. (*White* v. *Superior Court, supra,* at p. 55.) In *Comden,* the court reviewed an order granting a disqualification motion premised on the possibility the subject attorney might be called as a *witness.* The ethical rule requiring disqualification in such a situation (rule 2-111(A)(4)) set forth four exceptions.[4] One of

---

[4] The rule was rewritten in 1979 to provide greater leniency. Subject to certain conditions, an attorney may now continue employment when counsel knows or should know he or she may be called as a witness on the client's behalf. (Rule 2-111(A) (4).)

those exceptions was substantial hardship due to the distinctive nature of the lawyer or law firm. (Rule 2-111(A)(4)(d).)

Addressing petitioner's claim of substantial hardship, the high court remarked: "It would be naive not to recognize that the motion to disqualify opposing counsel is frequently a tactical device to delay litigation. (See *U.S. ex rel. Sheldon El. Co.* v. *Blackhawk Htng. & Plmb., supra,* 423 F.Supp. 486.) '[J]udicial scrutiny [is required] to prevent literalism from possibly overcoming substantial justice to the parties.' (*J. P. Foley & Co., Inc.* v. *Vanderbilt, supra,* 523 F.2d 1357, 1360, conc. opn. Gurfein, C. J.) However, ultimately the issue involves a conflict between a client's right to counsel of his choice and the need to maintain ethical standards of professional responsibility. 'The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount . . . . [The client's recognizably important right to counsel of his choice] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.' (*Hull* v. *Celanese Corporation* (2d Cir. 1975) 513 F.2d 568, 572.)" (*Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 915.)

The *White* court recognized the importance which *Comden* placed on the public's interest in an untainted judicial system; nevertheless, the court stated: "[I]t was not the intention of [the *Comden*] court to permit an adversary litigant to corrode, prostitute and defeat the objective of the rule by what amounts to no more than trial tactics. Pragmatically, discouragement of any merely tactical procedure affirms and strengthens the rule announced." (*White* v. *Superior Court, supra,* 98 Cal.App.3d at p. 55.)[5]

The appellate court in *White* passed over the complaint concerning past representation as one without substance. It focused instead on the attorney-witness claim, the sole issue before the *Comden* court. There is no indication that either the Supreme Court in *Comden* or the appellate court in *White* intended the "trial tactics" comment to become a rule of law applicable to past-representation disqualification cases. Notably, the *Comden* court's federal references were to cases which did not discuss the effect of delay in the past-representation context.

Some courts have cited *Comden*'s language respecting counsel of choice and ethical standards for the proposition trial courts may *weigh or balance* competing interests in deciding attorney-witness disqualification motions

---

[5]The rule to which the court in *White* referred appears to be: " 'When it is impractical to determine with certainty whether an attorney ought to testify, the trial court ordinarily must make a determination notwithstanding the uncertainty, as delay in making a decision may well prejudice the client.' " (*White* v. *Superior Court, supra,* 98 Cal.App.3d at p. 53, citing *Comden* v. *Superior Court, supra,* 20 Cal.3d at pp. 913-914.)

based on rule 2-111(A)(4). (*Reynolds* v. *Superior Court* (1986) 177 Cal.App.3d 1021, 1027-1028 [223 Cal.Rptr. 258]; *Lyle* v. *Superior Court* (1981) 122 Cal.App.3d 470, 480 [175 Cal.Rptr. 918]; *People* ex rel. *Younger* v. *Superior Court* (1978) 86 Cal.App.3d 180, 201-202 [150 Cal.Rptr. 156].) However, other courts have cited *Comden* for balancing competing interests in disqualification motions based on situations *other than* the attorney-witness scenario.

In *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042 [197 Cal.Rptr. 232], the court addressed a claim that a law firm was vicariously disqualified due to a partner's conflict of interest under rule 5-102(B).[6] In doing so, the panel wrote: "Trial courts in civil cases have the power to order disqualification of counsel when necessary for the furtherance of justice. (Code Civ. Proc., § 128, subd. 5; *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 901, fn. 4 [142 Cal.Rptr. 509].) Exercise of that power requires a cautious balancing of competing interests. The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 915; *Lyle* v. *Superior Court, supra,* 122 Cal.App.3d at p. 481; rule 5-102(B).)" (*William H. Raley Co.* v. *Superior Court, supra,* 149 Cal.App.3d at p. 1048.)

In addition, this court in *Elliott* v. *McFarland Unified School Dist., supra,* 165 Cal.App.3d at pages 567 and 572, adopted the *Raley* language regarding a delicate balancing process in a disqualification case based on alleged violations of rules 5-102(B) and 4-101.[7]

Further, in *Maruman Integrated Circuits, Inc.* v. *Consortium Co.* (1985) 166 Cal.App.3d 443, 450-451 [212 Cal.Rptr. 497], it was stated: "[I]n exercising this discretion [in a disqualification proceeding], the judge may properly consider the possibility that the party brought the disqualification motion as a tactical device to delay litigation. (*Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 915; *William H. Raley* v. *Superior Court, supra,* at p. 1048[;] *White* v. *Superior Court* (1979) 98 Cal.App.3d 51, 55 [159 Cal.Rptr. 278].)" (Fn. omitted.)

---

[6]Rule 5-102(B) provides: "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."

[7]See footnote 2, *ante.*

*Raley* and the cases which follow are troubling. They rely heavily upon *Comden*; however, *Comden* does not offer authority for interest balancing in deciding whether an attorney should be disqualified for conflict of interest. First, *Comden* was neither an adverse representation nor a past-representation case. Second, the ethical rule in *Comden,* rule 2-111(A)(4), included express exceptions, one of which, the "substantial hardship" test, enabled the court to balance interests. By comparison, rules 5-102(B) and 4-101 contain only one express exception, an informed and written consent of the client or former client. Third, the rule relied upon in *Comden* for balancing was amended in 1979 well before *Raley, Elliott* and *Maruman.* Fourth, without any apparent qualification, *Comden* says that a client's right to counsel of his choice must yield to ethical considerations which run to the very integrity of the judicial process.

Therefore, we believe *Raley* lacks Supreme Court authority for its claim of a balancing test in nonattorney-witness disqualification cases. The same is true of *Elliott* v. *McFarland Unified School Dist., supra,* which relied solely on *Raley* for a balancing test. Finally, in *Maruman Integrated Circuits, Inc.* v. *Consortium Co., supra,* 166 Cal.App.3d at page 449, the court's reference to a balancing test appears to be dictum in light of the fact the court found, under *Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582 [147 Cal.Rptr. 915], there was no prior representation.

Rules dealing with the attorney-witness conflict are based on far less dramatic principles than those which apply to the attorney who appears to take an adversary position to a former client in the same or a substantially related matter. While the dual role of counsel and witness may threaten an attorney's effectiveness as an advocate, it should not materially affect the other parties to the litigation. Further, the other parties may attack the attorney's credibility as a witness.

In contrast, the risk of an attorney "turning" on a former client in the same or a substantially related matter poses greater concern: There exists the potential for counsel to reveal or use the former client's confidences. As a result, the "substantial relationship" test is a strict, prophylactic rule. In applying this rule, courts avoid becoming enmeshed in considerations of the number and importance of the confidences, the potential impact of their use in litigation, or the effect of disqualification upon the parties. Therefore, if a timely motion to disqualify is made, we reject the idea that the trial court should enlarge its inquiry by balancing the parties' competing interests under its equity jurisdiction.

 If a substantial relationship is established, the discussion should ordinarily end. The rights and interests of the former client will prevail.

Conflict will be presumed; disqualification will be ordered. However, it is not in the interests of justice to make the "substantial relationship" rule *so unyielding* as to permit the former client to inexcusably postpone objections without penalty. Therefore, a narrow exception should apply if the present client, by way of opposition, offers prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client. (*Estate of Harootenian* (1951) 38 Cal.2d 242, 247 [238 P.2d 992]; *Newport* v. *Hatton* (1924) 195 Cal. 132, 148 [231 P. 987].) The trial court must have discretion to find laches forecloses the former client's claim of conflict. The burden then shifts back to the party seeking disqualification to justify the delay. That party should address: (1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why.

Similar results may be found in criminal cases. In *People* v. *Johnson* (1980) 105 Cal.App.3d 884, 892 [164 Cal.Rptr. 746], the court noted a former client can "expressly or impliedly" consent to adverse representation. There, the defendant raised the question for the first time on appeal. Noting *Earl Scheib, Inc., supra,* and its reluctance to presume consent, the *Johnson* court nevertheless found consent, stating: "[I]n this case, the defendant was in the best position to appreciate any impropriety in the proceeding." (*Ibid.*)

Although the federal rule is primarily concerned with avoiding the appearance of impropriety, some federal courts have also invoked the doctrine of laches. In the Ninth Circuit, the equitable principle is stated in terms of waiver: "It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." (*Trust Corp. of Montana* v. *Piper Aircraft Corp.* (9th Cir. 1983) 701 F.2d 85, 87.) In other circuits the courts have emphasized a party with knowledge will not be allowed to delay the disqualification motion for tactical reasons. (*Central Milk Producers Co-Op.* v. *Sentry Food Stores* (8th Cir. 1978) 573 F.2d 988, 992; *Redd* v. *Shell Oil Co.* (10th Cir. 1975) 518 F.2d 311, 315.)

When the trial court examines unreasonable delay and resulting prejudice, it acts in its equity jurisidiction. To some it may appear once equitable principles apply, the trial court will "weigh," as once was the case in attorney-witness disqualifications and as some courts have tried to do in past-representation disqualifications; however, this perception is not quite accurate.

When rule 2-111 permitted a weighing process to consider substantial hardship in the attorney-witness cases, the law was not primarily concerned with the objector's status. The law was more concerned with the appearance created by the attorney's dual role. Today, though, as previously noted, the need for "weighing" no longer exists in the attorney-witness case.

By comparison, in the case of past-representation disqualification based on substantial relationship, the law is primarily concerned with the presumed prejudice to the former client if the attorney in question is allowed to continue his or her present representation. That concern for the former client will be displaced only by the action or inaction of the complaining party, the former client. With convincing evidence that the delay was inexcusable and the present client will suffer prejudice, the court may find the former client has waived any right to disqualify counsel despite the existence of a substantial relationship.

### Application

Here it appears the trial court was persuaded by *Earl Scheib, Inc.,* that delay was irrelevant. No findings were made as to delay, even though the facts concerning the delay and its prejudicial effect were fully presented by documentary evidence. Section 909 of the Code of Civil Procedure permits the reviewing court to make additional factual determinations in appropriate circumstances. We do so in this case because it is manifest the delay was unwarranted and prejudicial to the interests of the present clients and the court. The same conclusion would be reached if there had been a contrary finding by the trial court. Nevertheless, we find in the record indications the trial court thought the delay was unwarranted.

We are benefited by a record of considerable size, expertly developed and preserved by skilled counsel and a scholarly trial court. When the hearing commenced, the trial judge acknowledged reading the numerous motion papers and noted the case would turn on whether there was sufficient proof of a substantial relationship. On this question, prior to argument, he said, "I consider it a very close call." At the same time, he added he had a question concerning the delay and admitted he was not convinced the objecting party had satisfactorily explained it.

In reply, defense counsel urged the "*Earl Scheib*" rule that "time spent on the matter in the meantime or otherwise is not relevant." Regardless, counsel argued no delay existed due to the unavailability of judges to hear motions in the case.

At the end of the hearing the court confirmed its initial impression: "I really think it's a close call." Our examination of the record convinces us

the trial judge was at this point referring to the substantial relationship issue, not the question of delay. Absent any finding concerning delay, we will highlight certain noncontroverted facts concerning knowledge and the objector's excuse that no judge was previously available to hear this motion.

■ Because of the law's concern for unhampered counsel on both sides of the litigation, "mere delay" in making a disqualification motion is not dispositive. The delay must be extreme in terms of time and consequence. Thus the court must initially determine when the former client became aware of the attorney's potential conflict. Whether there was diligence in making the motion for disqualification depends upon establishing that knowledge.

■ Prior to the initiation of this litigation, Attorney Greer's services were in demand. Indeed, defendant Nickel unsuccessfully tried to retain him. Presumably concerned about his relationship with his former client, Greer consulted the law offices of Young, Wooldridge, Paulden, Self, Farr & Hugie; he obtained a "To Whom It May Concern" opinion that he was not disqualified, due to his representation of Nickel, from advocating plaintiffs' interests. He then filed the current litigation on August 5, 1980.

In January 1981, Nickel filed with the California State Bar a complaint for disciplinary action against Greer. Nickel argued in considerable detail Greer's purported conflict of interest in representing plaintiffs. A State Bar official in turn sent Greer a letter which, in four pages of single-spaced print, detailed Nickel's contentions and sought a response. Greer replied on January 20, 1981, with 16 similar pages of complaint and answer defense. On July 1, 1981, the State Bar notified Nickel and Greer of its decision that the facts did not warrant disciplinary proceedings.

We consider the foregoing to be important only in respect to knowledge and timing. The information Nickel supplied the State Bar is similar to that he later used to obtain relief in the trial court. Nickel therefore had knowledge of the conflict well over three years *before* he made the motion to disqualify.

Significantly, throughout that period of over three years, Nickel was represented by counsel. Further, there is no evidence in the record that *any* individual prevented defendant Nickel from pursuing Greer and Kuhs and Parker's disqualification. Thus, the second and third criteria for evaluating delay in this case are satisfied.

Despite these facts, Nickel argues that to have moved for disqualification any sooner would have been futile. Nickel complains there was no court available to hear the disqualification matter during the 47-month period

between the filing of Nickel's answer and the filing of his motion to disqualify. Change of venue, judicial disqualifications and the parties' difficulty in locating an "acceptable" judge to hear the case allegedly prevented Nickel from bringing the motion sooner.

We will not consider the time when the venue motion was pending. We assume for purposes of this appeal that the filing of the venue motion operated as a stay. (*Pickwick Stages System* v. *Superior Court* (1934) 138 Cal.App. 448, 449 [32 P.2d 433].) As a result, the trial court may not have been able to hear a disqualification motion while the venue motion was pending. Yet there was nothing at that time to prevent Nickel from filing the motion and giving plaintiffs notice of his challenge. Whenever it first appears a disqualification motion should be noticed and filed, it should be done within a reasonable time irrespective of the date it might be heard.

There remained, nevertheless, approximately 39 months (47 months less 8 months for the venue matter) within which Nickel could have sought recusal of plaintiffs' counsel. While as a result of judicial disqualification there was a gap of approximately 10 months between disqualifications and assignment of substitute judges, almost 30 months passed while a trial judge was presumably available to hear the motion barring further judicial disqualification. More importantly, judicial disqualification and reassignment did not prohibit the filing of a disqualification motion.

Nickel contends the parties' difficulty in finding an "acceptable" judge excused his failure to notice a motion earlier in the proceedings. We disagree. To begin, it was not within the power of the parties and counsel to peremptorily "pick and choose" trial courts to their liking. The only authority remotely relating to this matter and permitting parties to "agree upon" a judge is Code of Civil Procedure section 170.3, subdivision (c)(5). The section authorizes appointment of an "agreed upon" judge when another judge refuses to recuse himself or herself. In those circumstances, the parties may agree upon a judge to hear and determine the issue of judicial disqualification. However, this was not a case of disputed judicial recusal.

In addition, the parties all knew they could file appropriately noticed motions even though a judge might not be readily available to hear them. For example, an assigned judge was peremptorily disqualified on August 24, 1984. Before another judge was assigned, plaintiffs filed their notice of motion seeking a partial summary judgment. Nickel responded by filing his disqualification papers, yet having no more assurance a judge would be available at that time than in the prior months and year.

 Difficulties in finding a "suitable" judge to hear an attorney disqualification motion do not excuse prompt noticing of the motion. Although the

absence of a judge may extend the time to bring the entire case to trial (*Hartman* v. *Santamarina* (1982) 30 Cal.3d 762, 768 [180 Cal.Rptr. 337, 639 P.2d 979]), the importance of placing adverse counsel and the parties on notice of a serious question concerning further participation in the litigation demands early notice and filing of the appropriate objections.

 The seriousness of the delay in this case is manifest. Although there was a personal attempt by Nickel to obtain disciplinary sanctions from the State Bar, it failed. True, different standards of proof were applicable, but the failure in that forum did not excuse his seeking prompt relief in the courts.

In the meanwhile, years passed and much work on the case was done. Nickel's principal attorney speculated the matter was dormant for some time. He reported *only* 230 hours of effort and a personal billing to Nickel of "less than $25,000.00" for that interval. During that same time, plaintiffs' counsel engaged in substantial discovery directed at Nickel and other defendants. One of the complained-of attorneys, Parker, examined over 200 files in the offices of Nickel's Sacramento counsel.

Having allowed plaintiffs' counsel to engage in over 3,000 hours of litigation effort at a cost of $387,000 constitutes prejudice in more than time and dollars expended. The fruits of discovery presumably were shared by plaintiffs and their counsel. We can assume there is a substantial "work product" in the hands of plaintiffs' counsel. The right to its possession and interpretation would become a serious and complex issue if counsel were disqualified prior to its use. This unnecessary complication and prejudice is a direct by-product of the delay.

Under these conditions, we find the delay in making the disqualification motion so unreasonable and the resulting prejudice so great, that the law must assume an implied waiver of the right to disqualify Attorney Greer; defendant Nickel is therefore estopped from asserting otherwise.

Because we have found an implied consent to Attorney Greer proceeding on behalf of plaintiffs, we need not address the issue of cocounsel Parker's right to continue in the case. His disqualification hinged upon Greer's being disqualified. The implied waiver of objection to Greer extends to Parker.

We therefore reverse the disqualification order. Costs on appeal are awarded to the plaintiffs.

Martin, J., and Best, J., concurred.

A petition for a rehearing was denied February 23, 1987, and respondent's petition for review by the Supreme Court was denied April 15, 1987.