[No. B169913. Second Dist., Div. Two. Sept. 1, 2004.]

HELEN BRAND, Plaintiff and Respondent, v.
20TH CENTURY INSURANCE COMPANY/21ST CENTURY
INSURANCE COMPANY, Defendant and Appellant.

596

598

**COUNSEL**

Horvitz & Levy, Frederic D. Cohen, Bradley S. Pauley; Lewis Brisbois Bisgaard & Smith, N. David Lyons and Celia Moutes-Lee for Defendant and Appellant.

Law Offices of Steven U. Ross and Steven U. Ross for Plaintiff and Respondent.

OPINION

**DOI TODD, J.**—Defendant 20th Century Insurance Company/21st Century Insurance Company (21st Century) appeals the denial of its motion to exclude the testimony of 21st Century's former attorney, Barry Zalma, as an expert in the trial of plaintiff Helen Brand's claims against 21st Century. 21st Century moved to disqualify Zalma under rule 3-310(E) of the Rules of Professional Conduct,[1] on the ground that he had formerly represented 21st Century in substantially related litigation and, as a result, had access to confidential information material to this action. We conclude that because Zalma was personally involved in providing legal advice and services to 21st Century in matters substantially related to the instant litigation, he is barred from testifying as an expert witness against 21st Century. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

From 1988 to 1991, 21st Century retained Zalma and his law firm, Barry Zalma, Inc., to defend 21st Century and to render coverage opinions in connection with coverage and bad faith claims under 21st Century's insurance policies. Zalma represented 21st Century in connection with a variety of coverage disputes, including coverage for moisture intrusion, rot and fungal infestation under 21st Century's homeowner policies. In total, Zalma directly represented 21st Century in 14 different actions. During the same period, Zalma supervised two or three attorneys employed by his law firm in handling an unspecified number of additional cases on behalf of 21st Century. While he was engaged as coverage counsel by 21st Century, Zalma received confidential information concerning the company's claims handling policies and procedures, its litigation strategies, and its business practices, concerning, among other issues, the company's handling of litigation based on mold infestation claims.

In 1990 Zalma and a business partner formed ClaimSchool, Inc., as an educational operation to train insurance adjusters and lawyers in the business of insurance. In 1990, while Zalma was still representing 21st Century, 21st Century engaged ClaimSchool to present a 12-week seminar to its adjusters

---

[1] Rule 3-310(E) provides that an attorney "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." (Rules Prof. Conduct, rule 3-310(E).)

concerning 21st Century's claims handling practices and procedures.[2] In preparation for the seminar, Zalma consulted with 21st Century concerning its claims handling policies and procedures, and during the seminar, he spent two or three days analyzing 21st Century's homeowner's policy line-by-line. Zalma acknowledges that as a result of this engagement to educate and train 21st Century's claims adjusters, he acquired knowledge of the company's claim handling practices, policies and procedures. He also provided the company with comments and criticism regarding its claims handling practices.

Plaintiff Helen Brand commenced the instant action based on a claim under her 21st Century homeowner's insurance policy for damage to her home due to mold caused by a water leak. A first amended complaint, filed on July 5, 2001, alleges five causes of action against 21st Century, including breach of contract and bad faith, based on 21st Century's alleged failure (1) to investigate properly plaintiff's loss; (2) to advise plaintiff whether the claim is covered under the homeowner's policy; and (3) to compensate plaintiff for the covered loss under the homeowner's policy. This complaint further alleges plaintiff suffered emotional distress stemming from the presence of mold in her home, and asserts 21st Century negligently repaired a floor after inspection, as a result of which plaintiff fell.

On December 3, 2002, Brand designated Zalma as her expert to testify on the issue of 21st Century's handling of her claim. Following Brand's refusal to withdraw the designation, 21st Century moved for a protective order barring Zalma from testifying as Brand's expert. At the hearing the trial court indicated it was not inclined to disqualify Zalma because: (1) 21st Century's claims handling practices "could be discoverable"; (2) 21st Century had not produced "enough proof" of a substantial relationship between Zalma's current engagement by Brand and his representation of 21st Century; and (3) Zalma's representation of 21st Century involved only the rendering of coverage opinions, not litigation. On this basis, the trial court denied the motion without prejudice to renew it following Zalma's deposition.

Following Zalma's deposition, 21st Century renewed its motion to disqualify Zalma as Brand's coverage expert. The motion was supported by Zalma's deposition testimony and the ClaimSchool notebook used in the seminar for 21st Century's claims handlers and adjusters, which contained numerous forms and documents related to 21st Century insurance policies and claims handling procedures.

---

[2] During its first three years in business as a training operation, 21st Century was the only client to engage ClaimSchool to provide such a seminar to its employees.

The trial court denied the motion, indicating that a substantial relationship between the prior and current representations could not be established based on the amount of time (12 years) between the two engagements. The trial court also found the ClaimSchool seminar to be a "general course," which could not form the basis for any claim of attorney-client privilege, and thus would not support Zalma's disqualification.

21st Century filed in this court a petition for writ of mandate, prohibition or other appropriate relief challenging the trial court's denial of the motion to disqualify Zalma.[3] A summary denial of the petition was issued on August 20, 2003.[4]

21st Century then filed a timely notice of appeal from the trial court's denial of the motion to disqualify Zalma.

## DISCUSSION

### A. *Appealability.*

The trial court's order denying the motion to disqualify counsel and prohibit Zalma from testifying in this action as an expert constitutes a "final order upon a collateral issue" as well as an order denying an injunction. As such, it is directly appealable. (*Meehan v. Hopps* (1955) 45 Cal.2d 213, 216–217 [288 P.2d 267]; see *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 455 [111 Cal.Rptr.2d 842].)

### B. *Standard of Review.*

We review a trial court's ruling on a disqualification motion for abuse of discretion, and we accept as correct all express or implied findings that are supported by substantial evidence. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 [86 Cal.Rptr.2d 816, 980 P.2d 371]; *City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322 [117 Cal.Rptr.2d 125].) "However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (*SpeeDee Oil, supra*, at p. 1144.)

---

[3] *20th Century Insurance Company/21st Century Insurance Company v. Superior Court* (Aug. 20, 2003, B169254).

[4] A summary denial of a writ petition does not constitute law of the case. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 894 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

## C. The "Substantial Relationship" Test.

Our Supreme Court has declared that " 'an attorney is forbidden to do *either* of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any [matter] in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.' . . . [T]he prohibition is in the disjunctive: [the attorney] may not use information *or* 'do anything which will injuriously affect his former client.' " (*People ex rel. Deukmejian v. Brown* (1981) 29 Cal.3d 150, 155 [172 Cal.Rptr. 478, 624 P.2d 1206], quoting *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 573–574 [15 P.2d 505].) This is codified in rule 3-310(E) of the Rules of Professional Conduct, and whether an attorney may accept an engagement adverse to the interests of a former client will depend upon an analysis of the relationship between the former and current representations. (*Santa Teresa Citizen Action Group v. City of San Jose* (2003) 114 Cal.App.4th 689, 710 [7 Cal.Rptr.3d 868].)

An attorney engaged in employment adverse to a former client is subject to disqualification where a "substantial relationship" exists between the lawyer's current employment and the lawyer's representation of the former client. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, supra*, 20 Cal.4th at p. 1146.) "Where an attorney successively represents clients with adverse interests, and where the subjects of the two representations are substantially related, the need to protect the first client's confidential information requires that the attorney be disqualified from the second representation. [Citation.]" (*Ibid.*)

The substantial relationship test as first adopted in California was articulated as follows: " '[w]hen a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. [Citation.] [¶] This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney.' ([*Global Van Lines, Inc. v. Superior Court* (1983) 144 Cal.App.3d 483, 489 [192 Cal.Rptr. 609]].)" (*City National Bank v. Adams, supra*, 96 Cal.App.4th at p. 325.)

■ The rule has undergone some refinement. In *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445 [280 Cal.Rptr. 614] (*Ahmanson*), the court established a "pragmatic approach, which focuses on the nature of the former representation." (*Id.* at p. 1455.) The *Ahmanson* court explained, "the attorney's possession of confidential information will be presumed only when ' "a substantial relationship has been shown to exist between the former representation and the current representation, *and* when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney . . . ." ' [Citations.] [¶] Under [this] formulation of the test, the courts focus less on the meaning of the words 'substantial' and 'relationship' and look instead at the practical consequences of the attorney's representation of the former client. The courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation. [Citation.]" (*Id.* at p. 1454, italics added; see also *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 708 [3 Cal.Rptr.3d 877] (*Jessen*).)

■ In *City National Bank v. Adams, supra*, 96 Cal.App.4th 315, the court summarized the statement of the rule for disqualification of an attorney in a successive representation case: "Our analysis of the case law involving successive representation of clients leads us to three conclusions that guide resolution of this case. First, if the nature of the representation is such that confidences *could have* been exchanged between the lawyer and the client, courts will conclusively presume they *were* exchanged, and disqualification will be required. [Citations.] [¶] Second, there is a limited exception to this conclusive presumption in the rare instance where the lawyer can show that there was no *opportunity* for confidential information to be divulged. [Citations.] [¶] Third, the limited exception is *not* available when the lawyer's former and current employment are on opposite sides of the very same matter or the current matter involves the work the lawyer performed for the former client." (*Id.* at pp. 327–328.)

■ In *Jessen, supra*, 111 Cal.App.4th at page 709, the court held that "the question whether an attorney should be disqualified in a successive representation case turns on two variables: (1) the relationship between the legal problem involved in the former representation and the legal problem involved in the current representation, and (2) the relationship between the attorney and the former client with respect to the legal problem involved in the former representation."

■ The *Jessen* court emphasized the significance of the second factor in determining if disqualification is required, explaining: "If the relationship between the attorney and the former client is shown to have been direct—that is, where the lawyer was personally involved in providing legal advice and services to the former client—then it must be presumed that confidential information has passed to the attorney and there cannot be any delving into the specifics of the communications between the attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship. As a result, disqualification will depend upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation. This is so because a direct attorney-client relationship is inherently one during which confidential information 'would normally have been imparted to the attorney by virtue of the nature of [that sort of] former representation,' and therefore it will be conclusively presumed that the attorney acquired confidential information relevant to the current representation if it is congruent with the former representation. (*Ahmanson, supra,* 229 Cal.App.3d at p. 1454; see also *Adams v. Aerojet-General Corp.* [(2001)] 86 Cal.App.4th [1324,] 1332 [104 Cal.Rptr.2d 116] [personal involvement in rendering legal advice to client requires disqualification if compared representations are substantially related]; *River West, Inc. v. Nickel* [(1987)] [188] Cal.App.3d [1297,] 1302–1303 [234 Cal.Rptr. 33].)" (*Jessen, supra,* 111 Cal.App.4th at p. 709.)

■ *Jessen* continued: "Therefore, when ruling upon a disqualification motion in a successive representation case, the trial court must first identify where the attorney's former representation placed the attorney with respect to the prior client. If the court determines that the placement was direct and personal, this facet of *Ahmanson* is settled as a matter of law in favor of disqualification and the only remaining question is whether there is a connection between the two successive representations, a study that may not include an 'inquiry into the actual state of the lawyer's knowledge' acquired during the lawyer's representation of the former client. (*Ahmanson, supra,* 229 Cal.App.3d at p. 1453; *Adams v. Aerojet-General Corp., supra,* 86 Cal.App.4th at p. 1332; *City National Bank v. Adams, supra,* 96 Cal.App.4th at p. 327; *River West, Inc. v. Nickel, supra,* 188 Cal.App.3d at pp. 1302–1303.) However, if the court determines the former attorney was not placed in a direct, personal relationship with the former client, the court must assess whether the attorney was positioned during the first representation so as to make it likely the attorney acquired confidential information relevant to the current representation, given the similarities or lack of

similarities between the two." (*Jessen, supra,* 111 Cal.App.4th at pp. 710–711; see also *Farris v. Fireman's Fund Insurance Co.* (2004) 119 Cal.App.4th 671, 678–679 [14 Cal.Rptr.3d 618].)

In *Farris,* the court applied these principles to disqualify attorney James H. Wilkins and his law firm from representing an insured in a bad faith/breach of insurance contract action against the insurer (FFIC) where Wilkins had previously represented FFIC in coverage matters. (*Farris v. Fireman's Fund Insurance Co., supra,* 119 Cal.App.4th at pp. 676–677.) Before starting his own law firm in 1997, Wilkins had worked at the McCormick law firm for 13 years as a key member of the firm's insurance coverage department. During that time, Wilkins participated in confidential communications with senior FFIC employees and gave coverage and claims handling advice to FFIC, including discussions of settlement, litigation and claims handling strategies in connection with coverage matters. He was also a presenter in educational seminars for FFIC employees on issues related to coverage disputes and bad faith actions. (*Id.* at p. 677.)

The *Farris* court explained that "the inquiry under *Jessen* focuses 'upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation.' [Citations.]" (*Farris v. Fireman's Fund Ins. Co., supra,* 119 Cal.App.4th at p. 681.) The court noted the undisputed evidence that Wilkins's relationship with FFIC was personal and direct, and, based on "the evidence of Wilkins's pervasive participation, and indeed his personal role in shaping, FFIC's practices and procedures in handling California coverage claims," concluded there was a substantial relationship between his successive representations of FFIC and Farris which compelled Wilkins's disqualification from representing an insured in litigation against FFIC. (*Id.* at pp. 679, 688.)

D. *The Trial Court Abused Its Discretion in Denying the Motion to Disqualify Zalma.*

As in *Farris,* the undisputed evidence before the court in this case establishes the requisite substantial relationship between Zalma's current and prior engagements to mandate his disqualification as an expert witness against his former client in this litigation. Not only did Zalma personally represent 21st Century as its attorney and supervise associates representing the company between 1988 and 1991, but Zalma's representation of 21st Century also concerned matters substantially related to the issues in the instant case in which he has been retained to testify against 21st Century.

The two engagements arose in the same context and share numerous factual and legal elements. While an attorney for 21st Century, Zalma rendered "numerous coverage opinions on behalf of 21st Century on a variety of claims issues, including moisture intrusion, rot, and fungal infestation." Zalma also defended 21st Century in actions by policyholders seeking coverage and/or alleging bad faith in claims handling. As the *Farris* court observed, "[a]n insurer's acceptance or denial of coverage necessarily raises legal issues about whether the insurer conducted an adequate investigation, whether the insurer gave sufficient consideration to the interests and expectations of the insurer, whether the insurer reasonably construed and applied the relevant policy language, and whether the insurer's construction and application of the relevant policy language was consistent with its treatment of other similarly situated insureds. . . . A coverage attorney's responsibility to his client includes advising the client on these subjects. . . . Coverage disputes are substantially related to bad faith actions for the purpose of attorney disqualification because they both turn on the same issue—whether or not there is coverage under the terms of the policy. [Citations.]" (*Farris v. Fireman's Fund Ins. Co., supra*, 119 Cal.App.4th at p. 684.)

Moreover, using knowledge gained from consultations with 21st Century concerning its claims handling policies and procedures, Zalma taught the company's claims adjusters how to evaluate claims for coverage under 21st Century's homeowner's policy and made suggestions to the company for improving its claims handling procedures. It is thus readily apparent that by virtue of the nature of Zalma's representation of 21st Century, confidential information material to the current dispute would normally have been imparted to Zalma. As such, Zalma's knowledge of confidential information must be presumed. (*Ahmanson, supra*, 229 Cal.App.3d at p. 1454; *Jessen, supra*, 111 Cal.App.4th at p. 708.)

In this case, Brand retained Zalma to testify about 21st Century's claims handling practices in an action in which Brand seeks coverage under 21st Century's homeowner's policy and alleges bad faith. Even the factual basis for Brand's claims is similar to the cases Zalma handled for 21st Century: like those cases, Brand's claims arise from alleged moisture intrusion and mold on her property. Therefore, from both a factual and legal perspective, the two engagements must be deemed substantially related, presenting a substantial risk " 'that representation of the present client will involve the use of information acquired in the course of representing the former client . . . .' " (*City National Bank v. Adams, supra*, 96 Cal.App.4th at p. 324, fn. 2, quoting Rest.3d The Law Governing Lawyers, § 132, pp. 376–377.) Since, in these circumstances, "confidences *could have* been exchanged between the lawyer

and the client, courts will conclusively presume they *were* exchanged, and disqualification will be required." (*City National Bank v. Adams, supra*, at p. 327.)

Neither Zalma's professed failure to recall any confidential information obtained during his representation of 21st Century nor the passage of 12 years since he directly represented 21st Century can overcome the conclusive presumption in this case, for 21st Century is not required to run the risk that Zalma will employ its confidential information to the company's detriment by being allowed to testify against it. "Where the factual presentations of the parties stray into the prohibited world covered by the conclusive presumption, the dispute effectively becomes a 'subtle evaluation of the extent to which [the attorney] acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' (*Ahmanson, supra*, 229 Cal.App.3d at p. 1453) When this occurs, the base purpose of the conclusive presumption is subverted by what in reality is an 'inquiry into the actual state of the lawyer's knowledge' and, as a result, the client's confidences are in danger of disclosure, however inadvertent." (*Jessen, supra*, 111 Cal.App.4th at p. 710, quoting *Ahmanson, supra*, 229 Cal.App.3d at p. 1453; see also *River West, Inc. v. Nickel, supra*, 188 Cal.App.3d at pp. 1301–1304 [water rights case handled by attorney 30 years prior deemed substantially related to current engagement].)

"[W]hen ruling upon a disqualification motion in a successive representation case, the trial court must *first* identify where the attorney's former representation placed the attorney with respect to the prior client." (*Jessen, supra*, 111 Cal.App.4th at p. 710, italics added.) The passage of 12 years between the two engagements did not neutralize Zalma's representation in the first case.[5] As his involvement in the first case was direct and personal, and the subjects of the two representations are substantially related, we conclude that the trial court abused its discretion in denying the motion to disqualify Zalma and bar him from testifying against his former client in these proceedings. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., supra*, 20 Cal.4th at pp. 1143–1144; *McPhearson v. Michaels Co.* (2002) 96 Cal.App.4th 843, 851 [117 Cal.Rptr.2d 489].)

---

[5] Brand attempts to distinguish *Farris* on the ground that the time between engagements in that case was less than a year. She further relies on dicta in *Farris* that a prior substantial relationship may be eliminated by the passage of time. But we are not persuaded that the passage of time in the present case was sufficient to overcome the presumption that Zalma acquired confidential information during his representation of 21st Century.

## DISPOSITION

The order is reversed. The trial court is directed to enter a new order granting 21st Century's motion to disqualify and exclude expert testimony by attorney Barry Zalma. Costs on appeal are awarded to 21st Century.

Nott, Acting P. J., and Ashmann-Gerst, J., concurred.