[No. G042602. Fourth Dist., Div. Three. July 16, 2010.]

LAURA MONTGOMERY et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
MARK KNIGHT, Real Party in Interest.

COUNSEL

Gans & Rosenfield, Paul W. Rosenfield and Jerry N. Gans for Petitioners.

No appearance for Respondent.

Reback, McAndrews, Kjar, Warford & Stockalper, Jamie A. Mason and Terrence J. Schafer for Real Party in Interest.

OPINION

**SILLS, P. J.**—Laura and Douglas Montgomery (the Montgomerys) are the plaintiffs in a medical malpractice action against physician Mark Knight. They petition for relief from the order of the trial court removing their only expert witness on the medical standard of care and causation. The trial court found the expert created an irreconcilable conflict of interest for Knight's counsel because he had represented the expert 10 years before. Petitioners contend the prophylactic removal was unnecessary because their expert waived any conflict of interest arising out of the previous representation. We agree and grant the petition.

## BACKGROUND

In December 2007, the Montgomerys filed a complaint against Knight and Euclid Outpatient Surgery Center, alleging that Knight was negligent when performing liposuction on Laura, causing injury. Douglas alleged damages arising from the loss of his wife's consortium.

On March 23, 2009, the Montgomerys filed their expert designation, listing Laura's treating physicians and John M. Shamoun, a board-certified plastic surgeon, who was expected to provide testimony on "the applicable standard of care, causation of damages and damages." At that time, trial was set for May 11, 2009.

Trial was continued to December 2009. In May, Knight filed a motion to preclude Shamoun from serving as the Montgomerys' expert because Knight's counsel, Terrence Schafer, had represented Shamoun in prior litigation. Schafer declared he had represented Shamoun in a prior medical malpractice case filed against him in 1999. Two days after the expert witness designation was filed, Schafer told the Montgomerys' counsel, Jerry Gans, about the conflict and asked him to voluntarily withdraw Shamoun as his expert, offering to give him more time to find another. Schafer pointed out that he had opposed Shamoun as an expert in another case against another former client of Schafer one year before. "For him to again agree to be an expert against another client of mine suggests that he is now seeking to create this conflict of interest." On April 28, Gans advised Schafer that Shamoun would "waive the conflict, subject to admissibility issues at trial."

The Montgomerys opposed Knight's motion, claiming there was no evidence that his counsel had represented Shamoun within the last 10 years or that his counsel had ever acquired any confidential information from Shamoun that would create an actual conflict of interest. Shamoun submitted a declaration stating, "I understand that my testimony in this matter may subject me to cross-examination in this adversarial proceeding . . . ." As the holder of the attorney-client privilege, Shamoun waived the privilege "as it applies to any relevant information to be presented in this matter."

The trial court granted the motion to disqualify Shamoun, explaining that its decision was based in part on a client's right to "vigorous representation." The court also told the Montgomerys' counsel, "[I]f Dr. Shamoun had simply disclosed this at the time you spoke to him . . . , we never would have gotten

here . . . . [¶] It was his obligation to tell you as soon as you contacted him . . . ."

## DISCUSSION

This case centers on the scope of an attorney's duty of confidentiality to a former client. This duty is set out in the Rules of Professional Conduct, rule 3-310(E): "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment." It is also codified in the Business and Professions Code: "It is the duty of an attorney to do all of the following: [¶] . . . [¶] (e)(1) To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (Bus. & Prof. Code, § 6068, subd. (e)(1).)

■ Typically, a former client seeks the disqualification of an attorney who has obtained, or could have obtained, confidential information about the former client during the previous representation and now represents a party adverse to the former client. (See, e.g., *In re Charlisse C.* (2008) 45 Cal.4th 145 [84 Cal.Rptr.3d 597, 194 P.3d 330]; *Brand v. 20th Century Ins. Co./21st Century Ins. Co.* (2004) 124 Cal.App.4th 594 [21 Cal.Rptr.3d 380]; *Western Digital Corp. v. Superior Court* (1998) 60 Cal.App.4th 1471 [71 Cal.Rptr.2d 179].) The case before us, however, presents a twist: Here, Knight and his attorney, Schafer, made a prophylactic motion to remove Shamoun, Schafer's former client, as the Montgomerys' expert. The intent of the motion was to preclude the Montgomerys from later moving to disqualify Schafer as Knight's attorney on the grounds that Schafer had obtained confidential information about Shamoun, which he could now use against the Montgomerys. Because the motion to remove Shamoun was based on preventing Schafer's subsequent disqualification, the correctness of the resulting order rests on whether Schafer should have been disqualified had such a motion been made.

A trial court's decision on a disqualification motion is reviewed for an abuse of discretion. " '[T]he importance of disqualification motions requires careful review of the trial court's exercise of discretion. [Citation.]' [Citation.]" (*Western Digital Corp. v. Superior Court, supra*, 60 Cal.App.4th at p. 1480.)

■ Case law has developed different standards for attorney disqualification depending on whether the conflict arises out of successive representation or simultaneous representation. "In successive representation cases, 'the chief

fiduciary value jeopardized is that of client *confidentiality*.' [Citation.] Therefore, the disqualification standards we have developed for such cases focus on the former client's interest 'in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation.' [Citation.] In simultaneous representation cases, '[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather than confidentiality.' [Citation.]" (*In re Charlisse C., supra*, 45 Cal.4th at pp. 159–160.) In a conflict of interest based on simultaneous representation, the rule is strict, requiring almost automatic disqualification " 'regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other. [Citation.]' [Citation.]" (*Id.* at p. 160.)

In successive representation cases, however, the party seeking to disqualify the attorney must show a substantial relationship between the two representations. "The 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other. Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory . . . ." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 [36 Cal.Rptr.2d 537, 885 P.2d 950].)

In the case before us, we question whether Schafer has made the threshold showing that his prior representation of Shamoun has a substantial relationship to his current representation of Knight. The only connection between the two is Schafer's assertion that he represented Shamoun in a "medical malpractice" case. The Montgomerys obliquely attack the relationship by complaining the prior representation was "more than ten (10) years ago" and for a mere "120-day period."

This need not concern us, however, because Shamoun has offered to waive the conflict. A former client can waive a conflict of interest on the part of his former attorney by executing an informed written consent to the subsequent representation. The Rules of Professional Conduct provide: " 'Informed written consent' means the client's or former client's written agreement to the representation following written disclosure," and " '[d]isclosure'

means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client." (Rules Prof. Conduct, rule 3-310(A)(1), (2).)

Knight argues Shamoun's waiver is inadequate because it is not unqualified; he points out that it is limited to "any relevant information to be presented in this matter." If Schafer attempted in good faith to introduce confidential information during his cross-examination of Shamoun that was ultimately deemed irrelevant, he would exceed the scope of the waiver, thereby risking his reputation and bar status.

We agree with Knight that Shamoun's consent to Schafer's representation of him must be unqualified. Knight has a legitimate interest in Schafer's vigorous representation, which in this context means that Schafer must feel free to conduct a thorough and comprehensive cross-examination of Shamoun without trying "to steer clear of the danger zone" of confidentiality. (*Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 620 [120 Cal.Rptr. 253].)

Knight worries that Schafer might be fettered in his cross-examination of Shamoun by lingering obligations of client loyalty and fears for his professional reputation. He cites *Hernandez v. Paicius* (2003) 109 Cal.App.4th 452 [134 Cal.Rptr.2d 756] as support for his fears: "The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship. As our Supreme Court has stated, the reason for the rule barring dual representation is evident: 'A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship.' [Citation.]" (*Id.* at p. 467, fn. omitted.)

■ The *Hernandez* case involved simultaneous representation of two clients, not successive representation. As we have discussed, the standard for simultaneous representation is much more stringent; it is based on the duty of loyalty and requires almost per se disqualification. Here, however, Schafer need not be concerned with loyalty to Shamoun so long as Shamoun executes an unqualified informed consent to Schafer's representation of Knight following written disclosure, in conformance with rule 3-310(C) of the Rules of Professional Conduct.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order granting Knight's motion to remove Shamoun as the Montgomerys' expert and offer the Montgomerys the opportunity to present Shamoun's unqualified consent to waive Schafer's duty of confidentiality as it applies to Knight's case. If the appropriate consent is given, the superior court is directed to enter an order denying Knight's motion to remove Shamoun as an expert witness.

Rylaarsdam, J., and Moore, J., concurred.