[No. F003470. Fifth Dist. Mar. 12, 1985.]

DENNIS MICHAEL ELLIOTT, Plaintiff and Respondent, v.
McFARLAND UNIFIED SCHOOL DISTRICT,
Defendant, Cross-complainant and Appellant;
MITCHELL L. GILBERT, as Superintendent, etc.,
Defendant and Appellant;
KERN HIGH SCHOOL DISTRICT,
Defendant, Cross-complainant and Respondent.

564

## COUNSEL

Ralph B. Jordan, County Counsel, Dennis Reid, Assistant County Counsel, and Nancy Lowe for Defendant, Cross-complainant and Appellant and Defendant and Appellant.

Frank J. Fekete, Peter C. Carton, Joanne A. Velman, Roger Wilner, Stephen L. Hartsell and Dwaine L. Chambers for Defendant, Cross-complainant and Respondent.

No appearance for Plaintiff and Respondent.

## OPINION

HAMLIN, ▉▉ ▉▉ ▉▉ ▉▉ McFarland Unified School District and Mitchell Gilbert, superintendent of McFarland Unified School District (jointly McFarland), appeal from a Kern County Superior Court order denying their motion to enjoin the attorneys for the board of trustees and the Kern High School District Superintendent (jointly Kern) from continuing to represent Kern in this mandamus proceeding (hereinafter motion to recuse).[1] Dennis Michael Elliott initiated this proceeding to compel Mc-

---

[1]Such an order is reviewable by appeal as an order refusing to grant an injunction. (*Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215-216 [288 P.2d 267]; *Kraus* v. *Davis* (1970) 6 Cal.App.3d 484, 487 [85 Cal.Rptr. 846].)

Farland or Kern to pay him for 51 accumulated vacation days or to compel McFarland, his current employer, to credit him with 51 vacation days.

We must decide whether the trial court abused its discretion in denying McFarland's motion. We conclude that it did not and affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND

Kern employed Elliott as a teacher for four years. Elliott claims that during this period he accumulated 71 days of unused vacation time. He was transferred on July 1, 1980, to the newly created McFarland Unified School District. About one month later, Kern paid Elliott for 20 days of unused vacation time pursuant to its administrative practice.

Sometime in 1982, Elliott demanded that either Kern or McFarland pay him for the uncompensated 51 vacation days he had accumulated or that McFarland credit him with 51 vacation days. When his demand was refused, Elliott filed a petition for writ of mandate to compel such payment or credit pursuant to Education Code section 44976.

School Legal Services (SLS) initially represented both Kern and McFarland in the mandamus proceeding. SLS provides legal services to school districts and other public education entities under a joint powers agreement. The Kern County Superintendent of Schools is the administrative agency under the joint powers agreement. The superintendent employs attorneys to provide legal services to participating school districts. Both before and after the initiation of this mandamus proceeding, SLS represented Kern and McFarland on other legal matters.

After SLS filed on behalf of Kern and McFarland points and authorities in opposition to Elliott's petition and arranged a continuance on the hearing of Elliott's petition, SLS called to the attention of McFarland a conflict in the legal positions of Kern and McFarland. On June 3, 1983, McFarland substituted Ralph B. Jordan, county counsel, for SLS as its legal representative in this proceeding.

Some six months later and four days before trial, McFarland filed an objection and answer to Elliott's petition and a cross-complaint against Kern for indemnity. Kern answered McFarland's cross-complaint and filed its own cross-complaint against McFarland. Thereupon McFarland filed an "Objection to Counsel for Kern H. S. District and Demand to Disqualify Counsel." An immediate hearing on McFarland's objection was arranged. In denying the objection without prejudice, the trial court characterized McFarland's objection as a motion to recuse and stated in part: "Upon a

proper showing at time of hearing that their [*sic*] is a factual dispute, the court may reconsider."

I. *Did the Trial Court Properly Deny McFarland's Recusal Motion?*

■ Trial courts have the power to order disqualification of counsel when necessary in furtherance of justice. (Code Civ. Proc., § 128, subd. (a)(5).) In a proceeding to disqualify counsel the trial court engages in the delicate balancing process explained in *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042, 1048 [197 Cal.Rptr. 232]: "The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest. [Citations omitted.]" ■ The trial court's decision on disqualification will not be disturbed on appeal absent an abuse of discretion. (*Chambers* v. *Superior Court* (1981) 121 Cal.App.3d 893, 903, fn. 7 [175 Cal.Rptr. 575]; *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 901, fn. 4 [142 Cal.Rptr. 509].)

■ McFarland argues that the trial court erred in denying its recusal motion because SLS's representation of Kern against McFarland in the Elliott proceeding amounts to representation of conflicting interests without informed written consent contrary to California State Bar Rules of Professional Conduct, rule 5-102(B)[2] and the use of confidential information SLS acquired as attorney for McFarland contrary to rule 4-101.[3] Rule 4-101 provides: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, *relating to a matter in reference to which* he has *obtained confidential information* by reason of or in the course of his employment by such client or former client." (Italics added.)

As noted above, SLS's only representation of both Kern and McFarland in the Elliott proceeding consisted of filing points and authorities and arranging an extension of time for these parties to answer. These points and authorities were almost exclusively a memorandum of law supporting denial

---

[2]Rule 5-102(B) provides: "A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned."

[3]Further references to rules are to the Rules of Professional Conduct.

of liability by both Kern and McFarland. While the record reveals no written consent by Kern and McFarland to their joint representation by SLS in the Elliott proceeding, it does indicate that McFarland and Kern were parties to a joint powers agreement dated September 2, 1980. Paragraph 21 of that agreement provides: "21. *Parties Hereto in Conflict.* In the event that two or more parties hereto are unable to resolve a legal issue between or among them without legal proceedings, the party or parties in contra-position to that of legal counsel employed as set forth herein on the legal issue involved shall secure its/their separate legal counsel at its/their own expense and apart from the costs, fees or liabilities for payments as set forth herein."

We believe the quoted provision of the joint powers agreement constitutes written consent to SLS's continued representation of Kern in the Elliott proceeding and on other legal matters and of McFarland on other legal matters. It follows that if SLS is to be disqualified in the Elliott proceeding it must be for violation of rule 4-101.

■ An attorney licensed to practice law in California must conform to established professional standards. (*Librarian* v. *State Bar* (1943) 21 Cal.2d 862, 865 [136 P.2d 321].) Rule 4-101 is aimed to protect the confidential relationships between attorney and client. (See *Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 619 [120 Cal.Rptr. 253]; *Jeffry* v. *Pounds* (1977) 67 Cal.App.3d 6, 9 [136 Cal.Rptr. 373]; *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1963) 218 Cal.App.2d 24, 28 [32 Cal.Rptr. 188].) However, nothing in rule 4-101 prohibits an attorney from accepting employment adverse to a former client if the matter has no relationship to confidential information acquired by reason of or in the course of his employment by the former client. (*Goldstein* v. *Lees, supra,* at p. 619.)

Case law interpreting what is "confidential information" initially asks whether the former representation is *substantially related* to the current representation. (*Global Van Lines, Inc.* v. *Superior Court* (1983) 144 Cal.App.3d 483, 488 [192 Cal.Rptr. 609]; *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994, 998.)[4] Where the substantial relationship exists, especially where the relationship is such that confidential information normally would have been imparted to the attorney, a "rule of necessity" causes a presumption of conflict. (*Global Van Lines, Inc., supra,* at p. 489. See also

---

[4]The court in *Global Van Lines, supra,* at page 488, footnote 3, pointed out that the substantial relationship test has been widely recognized and applied in federal courts since its enunciation in *T. C. Theatre Corp.* v. *Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265, 268. The rule is followed in all the circuits, except the First and Fourth. (*Ibid.*)

*Vangsness* v. *Superior Court* (1984) 159 Cal.App.3d 1087, 1090 [206 Cal.Rptr. 45].) Actual possession of confidential information need not be proved to disqualify an attorney from representing the adversary of a former client in litigation against a former client. (*People* ex rel. *Deukmejian* v. *Brown* (1981) 29 Cal.3d 150, 156 [172 Cal.Rptr. 478, 624 P.2d 1206]. See also *Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669, 675 [153 Cal.Rptr. 295].)[5]

The leading California case applying this confidential information presumption based upon a substantial relationship is *Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d 483. The defendant petitioned for a writ of mandate after the superior court denied the defendant's motion to disqualify the plaintiff's attorney because he allegedly had confidential information germane to the underlying suit. The defendant was a household goods moving company. The plaintiff was the defendant's distributing agent in Santa Clara County. The plaintiff alleged that the defendant breached the parties' agency contract by allowing other agents to solicit business in the county. On appeal, the court issued the writ because it found that there was a substantial relationship between the attorney's former representation of the defendant and his current representation of the plaintiff. The evidence showed that the litigants' difficulties arose during the attorney's tenure as general counsel for the defendant. Interoffice memoranda generated during the attorney's general counsel tenure revealed the plaintiff's dissatisfaction with the defendant's handling of its agency agreement. The attorney also was directly involved in the acquisition of the company which the defendant was wrongfully permitting to solicit business in the plaintiff's county. ■ ■ ■ ■ Furthermore, the defendant's defense that the plaintiff's interpretation of the agency agreement violated antitrust laws might depend on the intent and conduct of the defendant's top management toward its agency agreements, and therefore necessarily implicated the attorney's previous role as general counsel. (*Id.,* at pp. 488-489.)[6]

---

[5]This presumption includes the potential, as well as actual, use of confidential information. (*Woods* v. *Superior Court* (1983) 149 Cal.App.3d 931, 935 [197 Cal.Rptr. 185].)

[6]The *Global Van Lines, Inc.* court stated: "When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible, the attorney's knowledge of confidential information is presumed. [Citation omitted.]

"This is the rule by necessity, for it is not within the power of the former client to prove what is in the mind of the attorney. Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.' [Citations omitted.]" (*Id.,* at p. 489.)

Absent such a "substantial relationship" showing, courts have been reluctant to disqualify attorneys despite misgivings about the attorney's conduct. "This reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons. [Citations omitted.] And even when made in the best of faith, such motions inevitably cause delay." (*Bd. of Ed. of N.Y. City* v. *Nyquist* (2d Cir. 1979) 590 F.2d 1241, 1246. See also *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at pp. 901-902.)

Two recent cases that support appellant's position have found presumed confidential information by applying the "substantial relationship" test. In *Dill* v. *Superior Court* (1984) 158 Cal.App.3d 301 [205 Cal.Rptr. 671] the plaintiff sought to disqualify the defendant's law firm because a firm member had formerly represented the plaintiff in that action. The representation had included an appearance on plaintiff's behalf and the taking of two depositions. On appeal, the court found that these facts amply satisfied the "substantial relationship" test citing *Global Van Lines, Inc.* v. *Superior Court, supra,* 144 Cal.App.3d 483. The court believed the court appearance and the taking of depositions would ordinarily entail the disclosure of confidential information pertinent to the case.

Similarly, in *Civil Service Com.* v. *Superior Court* (1984) 163 Cal.App.3d 70 [209 Cal.Rptr. 159] the County of San Diego filed suit against the San Diego County Civil Service Commission in order to have reinstated two county employees who had been demoted or laid off. The county counsel represented the county, and the commission obtained independent counsel. Prior to the suit, the commission had consulted the county counsel and had received advice from him on precisely the same matters as to which the county was suing the commission. The trial court denied the commission's motion to disqualify the county counsel. On appeal the court, without discussing the delicate balancing process to be engaged in by a trial court in a motion to disqualify, reversed based on this "substantial relationship" test. It was pointed out that proving confidentiality has concerned courts because of "the prospect of a swearing contest between the attorney and former client as to whether the attorney had access to confidential information in the course of the former representation. To avoid this problem, the 'substantial relationship' test was developed: . . ." (*Id.,* at p. 79, fn. omitted.) Therefore, actual possession of confidential information is not required in order to disqualify where there is a substantial relationship between the current and former representation. The court found that the county counsel advised the commission on precisely the same matter as to which the county was suing the commission. The county's argument that county counsel ob-

tained no confidential information from the commission was thus irrelevant.[7]

Although *Civil Service Com., supra,* supports appellant's position, it is not controlling here. First, in *Civil Service Com.* county counsel had advised both the county and the commission on their legal rights pertaining to the underlying suit. ■ In contrast, SLS merely filed a points and authorities brief arguing Elliott's petition was without merit because Labor Code section 227.3 did not apply to school districts. In addition, SLS arranged for a continuance. We cannot say that a presumption that confidential information was disclosed arises from such a relationship. This is not a situation in which SLS advised McFarland how to handle Elliott's accrued vacation to minimize the possibility of liability to him or to preserve a claim for indemnity against Kern and then later represented Kern against McFarland. Also, SLS's relationship to McFarland was not like the attorney's relationship in *Dill, supra,* where the taking of depositions satisfied the "substantial relationship" test because confidential information from a client is ordinarily acquired in order to properly conduct depositions.

Second, it is significant that unlike *Civil Service Com., supra,* or *Dill, supra,* the parties in the instant case had entered into an agreement to preserve the benefits of common representation while anticipating the situation that arose. They recognized and attempted to resolve in advance the consequences flowing from possible conflicts between the participating public entities. This attempt may be regarded as agreement on "conduct which accurately reflect[s] the realities of practice in the private and public sectors." (See *Civil Service Com.* v. *Superior Court, supra,* 163 Cal.App.3d at p. 84.) Included in that attempt was the express recognition of the privileged nature of information and the elements of confidentiality in matters affecting an individual district. To permit disqualification without a showing that privileged or confidential information had been imparted to SLS in connection with the prior representation would defeat the purpose of the agreement.

Third, in *Civil Service Com.* the facts apparently did not require the court to engage in the delicate balancing process usually required of a trial court in deciding a disqualification motion. Here the necessity of the balancing process is apparent from the financial burden on Kern if it is not permitted

---

[7]In support of their position, the court in dicta stated: "It strikes us that this situation is not dissimilar from the case where an attorney undertakes to advise two clients on a single matter or transaction. The attorney may be either an intermediary, actively attempting to accommodate the clients' competing interest, or merely an advisor, explaining to the clients their legal options. In either case, if the matter later results in litigation, the attorney is precluded from representing either client. (*Id.,* at p. 81.)

to retain SLS in accordance with the joint powers agreement. Moreover, the delay and possible tactical abuse resulting from disqualification must be considered because of McFarland's long delay in bringing the disqualification motion.

Here it must have been apparent to McFarland in light of the joint powers agreement that SLS could only be disqualified if McFarland had actually imparted confidential information about the Elliott claim. Nonetheless, the declarations it filed to support such a finding contained only conclusory allegations on the subject. Gilbert's declaration set forth nothing to show the nature of the alleged confidential communications or their relationship to any factual issue or tactical decision involved in the Elliott proceeding. It merely stated that "I have confided, and members of the Board . . . have confided, in SLS and its attorneys information germane and vital to this [Elliott] lawsuit."

McFarland's other declaration in support of its motion to disqualify SLS was provided by D. Reid, deputy county counsel. It stated: "SLS has information concerning the McFarland defendants, acquired as attorneys for them, which may in this lawsuit be used to the advantage of the plaintiff and KHSD [Kern] to the detriment of the McFarland defendants, . . ."

While we do not suggest that a party seeking disqualification is required to disclose the actual communications it contends are confidential, we do hold that conclusory statements such as those provided by McFarland are insufficient. A requirement that there be some showing of the nature of the communications or a statement of how they relate to the current representation without disclosing what was actually communicated cannot reasonably be regarded as burdensome or prejudicial. (See *Ward* v. *Superior Court* (1977) 70 Cal.App.3d 23, 34 [138 Cal.Rptr. 532]; *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at p. 903.)

Had McFarland truly conveyed confidential information to SLS pertaining to the Elliott suit, McFarland could have revealed the nature of the information disclosed or to what it relates, and the present appeal would likely have been averted. Instead, McFarland's attorneys, after being on the case for over six months (June 3, 1983, to Dec. 14, 1983), moved to disqualify SLS *two* days before their scheduled trial. Although it is unknown whether this was interposed for tactical reasons, it did cause a substantial delay in the ongoing proceedings. (See *Bd. of Ed. of N.Y. City* v. *Nyquist, supra,* 590 F.2d 1241; *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d 893.)

In reaching our decision, we are fully aware that " '[c]onscience and good morals dictate that an attorney should not so conduct himself as to be open

to the temptation of violating his obligations of fidelity and confidence.' " (*Goldstein* v. *Lees, supra,* 46 Cal.App.3d at p. 620, quoting *Anderson* v. *Eaton* (1930) 211 Cal. 113, 117 [293 P. 788].) Moreover, " '[i]t is better to remain on safe and secure professional ground, to the end that the ancient and honored profession of the law and its representatives may not be brought into disrepute. Courts have consistently held the members of the profession to the strictest account in matters affecting the relation of attorney and client.' "² (*Tomblin* v. *Hill* (1929) 206 Cal. 689, 694 [275 P. 941], quoting *Addison* v. *Cope* (1922) 210 Mo.App. 569 [243 S.W. 212, 215].) However, we believe disqualification in the instant case would be an "excessive sanction for the appearance of a concededly nonexistent impropriety. A court concerned with the public's baseless perception of evil would be well-advised to . . . proceed cautiously. The public, after all, might be equally, if not more concerned, over the use of disqualification as a litigation tactic resulting in hardships to innocent clients." (Comment, *The Chinese Wall Defense to Law-Firm Disqualification* (1980) 128 U.Pa.L.Rev. 677, 700. See also *Chambers* v. *Superior Court, supra,* 121 Cal.App.3d at p. 902.)

By signing the joint powers agreement McFarland waived its right to disqualify SLS from representing other signatories to that agreement based on a presumption from a substantial relationship between SLS's former representation and its current representation. It did not waive its right to disqualify SLS if SLS acquired in the former representation confidential information pertaining to the current representation. However, McFarland offered no substantial evidence that it had imparted confidential information to SLS on this case. We therefore conclude that the trial court did not err in denying McFarland's motion to recuse SLS without prejudice to its right to reconsider upon a proper showing at the time of hearing that there is a factual issue.

The order denying McFarland's motion to recuse is affirmed and the matter is remanded to the trial court for further proceedings. Kern shall recover from McFarland its costs on appeal.

Hanson (P. D.), Acting P. J., and Best, J., concurred.