[No. D014207. Fourth Dist., Div. One. Nov. 8, 1991.]

In re LEE G., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Appellant, v.
DIANE G., Defendant and Respondent.

COUNSEL

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Appellant.

Gary S. Plavnick, under appointment by the Court of Appeal, for Defendant and Respondent.

Robert Wayne Gehring, under appointment by the Court of Appeal, for Minor.

OPINION

**HUFFMAN, J.**—At a contested review hearing involving Lee G., who had been a dependent child of the juvenile court for 18 months, the attorney for Lee's mother, Diane G., made an unnoticed oral motion to recuse the office of county counsel from representation of the petitioner in the dependency action, the department of social services (the Department). Since Diane was under an LPS conservatorship (Lanterman-Petris-Short Act, Welf. & Inst. Code, § 5000 et seq.)(LPS Act),[1] and since her public conservator was also represented by the office of county counsel, Diane's attorney argued that the office of county counsel was taking conflicting positions with regard to his client: for purposes of the conservatorship, county counsel argued Diane was incapable of entering into contracts on her own behalf; with respect to the dependency proceedings, county counsel sought a finding on whether Diane had adequately complied with her reunification plan in order to regain custody of Lee. Persuaded that these positions represented a conflict of interest and adverse representation toward Diane, the juvenile court granted the motion and ordered that alternate counsel be appointed to represent the Department in the dependency proceedings because of the pending conservatorship.

Our analysis of the applicable rules regarding disqualification of trial counsel leads us to conclude the juvenile court's order was an abuse of discretion, made without an adequate factual or legal basis. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Lee was just under three years old when the Department filed a petition in juvenile court alleging that he came within the provisions of section 300,

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

subdivisions (b) (risk to the child because of failure or inability of the parent to adequately supervise and protect him) and (g) (being left without any provision for support because of the parent's institutionalization or unwillingness to care for the child). According to the petition, Lee's mother, Diane had a mental disorder consisting of acute paranoia and delusions which rendered her incapable of providing regular care for him.[2]

Pending the jurisdictional hearing, Diane contested the allegations of the petition and Lee was ordered detained in the home of his maternal grandmother, Barbara J. Attorneys were appointed for all parties. At that time, and until December 11, 1989, the Department was represented by the office of the San Diego County District Attorney. On December 11, 1989, county counsel took over representation of the Department in the matter.

At the jurisdictional hearing held August 2, 1989, all parties submitted the matter to the juvenile court for a decision based on the social worker's reports prepared for the hearing. The allegations of the petition brought under section 300, subdivision (g) (being left without provisions for support), were found to be true, and the court dismissed the remaining allegations. A dispositional hearing was set for August 21, 1989, and was continued a number of times until November 20, 1989.

At the dispositional hearing, Lee was declared a dependent child of the juvenile court (§ 300, subd. (g)) and his custody was removed from Diane under section 361, subdivision (b)(1). Lee remained in the home of his maternal grandmother. Diane was ordered to comply with the requirements of her reunification plan, which included supervised visitation, obtaining suitable housing, and participating in parenting classes, therapy and counseling.

The record does not reveal when an LPS conservator was appointed for Diane, but a supplemental report prepared for a hearing held December 11, 1989, for the purpose of taking final action on Diane's reunification plan, shows that her public conservator signed a release of medical information form and approved her proposed reunification plan. In September 1990, her conservatorship was reestablished for another year. (§ 5361.)

At a six-month review hearing held May 23, 1990, Lee was continued as a dependent child of the juvenile court, placed in his maternal grandmother's home.

---

[2]With respect to Lee's father, Daryl H., the petition alleged he was unwilling to have physical custody of the minor. Daryl does not want to reunify with Lee and has never complied with any reunification plans ordered. He has not participated in this appeal.

On the date set for the 12-month review hearing, a guardian ad litem was appointed to represent Diane. (Code Civ. Proc., § 372.) The review hearing was continued and was set as a contested matter on February 13, 1991. In the social study prepared for the review hearing, Diane's compliance with the reunification plan was evaluated as incomplete, since some supervised visitations did not go well and since she continued to live in board and care facilities because of her mental condition and thus was not able to obtain housing suitable for Lee. The report recommended that a permanency planning hearing be set, and the minute order of continuance notes that "18 month issues" concerning permanency planning were to be before the court at the contested review hearing. (§§ 366.21, subd. (g)(1), 366.22, subd. (a).)

At the outset of the contested review hearing, Diane's attorney orally presented a motion, without benefit of points and authorities, which he had thought of as he was driving into the parking lot. Counsel stated:

"Your Honor, it is my position that County has a conflict here because the mother, my client, has a conservator, and so downtown they are prosecuting the case alleging that my client is unable to care for herself and has an inability to commit [to] contracts. Then up here, they're prosecuting a case and saying the mother has sufficient aptitude to understand the [reunification] plan and should be able to deal with the plan, and because she has not dealt with the plan appropriately, they want to terminate or suggest services be terminated and to a 26 hearing [section 366.26, permanency planning hearing]. I think those are conflicting views. I don't think the County can represent on one hand the position today and then another day represent the fact that the mother is incompetent."

Diane's attorney also pointed out that the Department (the petitioner in the dependency action) had a separate branch which handled conservatorships. The court officer at the hearing explained that the children's social [services] bureau and the adult protective services department were two distinct entities which do not share facilities or staff or intermingle cases.

County counsel's representative opposed the motion for recusal, arguing there was no conflict because the juvenile court dependency division and the county counsel office downtown (which handles conservatorships) are completely separate and distinct offices which do not share cases. Deputy county counsel further stated the mother's reunification plan had been approved by her conservator. After a brief recess, another representative of county counsel appeared and reiterated the grounds for opposing the motion:

"We did not represent the mother downtown, nor did we represent the mother in this proceeding. We represent the department of social services, so

I can't possibly see a conflict of issues [*sic*] would exist. We are a separate unit from the downtown unit. . . . We don't believe there is any conflict whatsoever, and if there was, there certainly couldn't be a conflict with us. How could we, who brought an action downtown in which this mother is on the opposing side, possibly create a conflict here when we are representing the department of social services? [¶] . . . [N]o one in our office, rather, has ever represented this lady in any proceeding nor do we have any knowledge of any information. That information downtown is not shared with us. We do not have access to it. We don't know if it is in existence, and we do not include it in any action here. We merely represent the department of social services in their efforts to go forward on a 22 [section 366.22] hearing today. So, again, I can't possibly see how we would have any information that would prejudice this lady in her case today."

Deputy county cocounsel continued, "The only argument could be that we obtained information from other sources, but that information is not relevant to this issue here. We are not saying the mother is incompetent. The issue of the 18 [-month review] hearing is whether it would be detrimental to return. There is no argument that the mother is not competent. That's really—the relevant issue for discussion today is how she parents the child. That's really the only relevant issue."

The juvenile court referee who was presiding at the hearing commented that based on her experience in another county legal agency, "One branch of the facility is responsible whether you really talk to one another or not. Everybody in county counsel is one big law firm, and so whether or not they actually share information back and forth really doesn't change the situation." The referee ruled there was a conflict of interest, as well as an appearance of impropriety, based on the constructive possession of all county counsel case files by each division of county counsel. The court stated:

"If the witnesses and the issues are similar and since you, county counsel, are representing the department of social services here and county counsel is representing whatever department it is that is prosecuting or pursuing a conservatorship in which the argument is that the mother is not competent and that the argument here is that the mother is competent for purposes of the reunification plan, I think that not only is there an appearance of impropriety, but there is a conflict, and I am going to recuse county counsel."

A continuance of the contested review hearing was ordered to allow the Department to obtain new counsel. ██ Pending that hearing, the

Department sought a writ of mandate and immediate stay of trial from this court; the applications were summarily denied.[3] ▮▮▮ The Department, by its attorney, the office of county counsel, appealed the order recusing county counsel.[4] At the continued proceedings, the San Diego County District Attorney's Office represented the Department.[5]

## DISCUSSION

▮ Diane contends that county counsel's representation of the Department in the dependency matter concerning her son constitutes adverse representation in light of her conservatorship status. She maintains that a constructive attorney-client relationship exists between her and county counsel, based on a fiduciary duty owed to her by her official public conservator, and arguably, also by her conservator's counsel. She pursues this position in spite of her trial counsel's recognition in the oral motion that in both its capacities in dealing with Diane's cases, county counsel was acting as a "prosecutor":

". . . so downtown they are *prosecuting* the case alleging that my client is unable to care for herself and has an inability to commit contracts. Then up

---

[3]The petition for writ of mandate reveals that a rehearing of the referee's order recusing county counsel was sought but was denied by the juvenile court. (§ 252.) Pursuant to the request of the parties, we have taken judicial notice of the writ proceedings and order. (D014018, Mar. 7, 1991; Cal. Rules of Court, rule 977(b); Evid. Code, § 459, subd. (a).) This court's denial of the Department's petition for writ of mandate and stay of the proceedings was summary in nature and did not constitute a decision on the merits of the issue currently presented. (*Donia* v. *Alcoholic Bev. etc. Appeals Bd.* (1985) 167 Cal.App.3d 588, 594 [213 Cal.Rptr. 447].)

[4]The order of disqualification is properly reviewable by this court both as an order after judgment pursuant to section 395, and under normal civil procedure principles, as set forth in *Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 599, footnote 1 [168 Cal.Rptr. 196]: "This order [of disqualification as attorney of record] is appealable either as a final order upon a collateral matter under Code of Civil Procedure section 904.1, subdivision (a), or as an order granting an injunction under subdivision (f) of the same statute. [Citations.]" (Also see Cal. Rules of Court, rules 1435 and 1(a), requiring this court to liberally construe the notice of appeal.) County counsel thus may properly appear to challenge the order recusing it.

Neither does there appear to be any problem presented concerning mootness of the order, in light of the ongoing nature of the juvenile jurisdiction and proceedings. (§ 366.3, subd. (a).) Due to the possibility of repetition of this scenario, the matter is clearly reviewable as " 'a continuing controversy ripe for decision.' [Citation.]" (*Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717].) Moreover, there is no reason to assume the decision of this court will cause any undue delay in the proceedings affecting Lee; our finding that the recusal should not have been ordered has prospective effect only, and does not affect the validity of the previous proceedings.

[5]A permanency planning hearing on Lee's case was held pursuant to section 366.26 on July 31, 1991, as we have learned from a letter from Lee's appellate counsel dated July 19, 1991, and from our perusal of the juvenile court file pursuant to Evidence Code section 459, subdivision (a).

here, they're *prosecuting* a case and saying the mother has sufficient aptitude to understand the [reunification] plan and should be able to deal with the plan . . . ." (Italics added.)

Nevertheless, relying on *People* v. *Conner* (1983) 34 Cal.3d 141, 148 [193 Cal.Rptr. 148, 666 P.2d 5], Diane argues a "conflict" exists "whenever the circumstances of a case evidence a reasonable possibility that the [public attorney's] office may not exercise its discretionary function in an even-handed manner." (*Ibid.*) She contends the two dissimilar positions taken by county counsel in the two proceedings show a lack of the required "even-handedness" on the part of the office of county counsel. (*People* ex. rel *Clancy* v. *Superior Court* (1985) 39 Cal.3d 740, 746 [218 Cal.Rptr. 24, 705 P.2d 347]; *People* v. *Conner, supra,* 34 Cal.3d 141.) She also claims a presumption of conflict arises from the possibility that different divisions of the office of county counsel might have been able to share confidential information concerning her two cases, even though no such factual showing was made at the hearing.

To examine the merits of these contentions, we first set forth the standard the trial court must apply in ruling on requests to disqualify counsel. We then discuss the nature of county counsel's representation in conservatorship and dependency matters, and finally consider the adequacy of the showing here that disqualification should have been ordered.

I

In *Elliott* v. *McFarland Unified School Dist.* (1985) 165 Cal.App.3d 562, 567 [211 Cal.Rptr. 802], the court outlined the rules to be applied by the trial court when faced with a motion to disqualify an attorney:

"Trial courts have the power to order disqualification of counsel when necessary in furtherance of justice. (Code Civ. Proc., § 128, subd. (a)(5).) In a proceeding to disqualify counsel the trial court engages in the delicate balancing process explained in *William H. Raley Co.* v. *Superior Court* (1983) 149 Cal.App.3d 1042, 1048 [197 Cal.Rptr. 232]: 'The court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqual-ified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by indepen-dent counsel unencumbered by conflicts of interest. [Citations.]' The trial court's decision on disqualification will not be disturbed on appeal absent an abuse of discretion. [Citations.]"

In exercising its discretion, the trial court is required to make a " ' "reasoned judgment" ' and compl[y] with the ' "legal principles and policies appropriate to the particular matter at issue." ' [Citations.]" (*Gregori* v. *Bank of America* (1989) 207 Cal.App.3d 291, 300 [254 Cal.Rptr. 853].) Where the evidence concerning the representation, as here, is not conflicting, the determination of the existence of an attorney-client relationship is a question of law. (*Ward* v. *Superior Court* (1977) 70 Cal.App.3d 23, 31 [138 Cal.Rptr. 532].)

The appropriate legal principle to be applied is rule 3-310[6] of the Rules of Professional Conduct of the State Bar, Avoiding the Representation of Adverse Interests.[7] ■■■■ In particular, rule 3-310(D) prohibits an attorney from accepting employment adverse to a client or former client, except with the informed written consent of that client, where, "by reason of the representation of the client or former client, the member has obtained confidential information material to the employment . . . ."

The parameters of this rule have been developed in case law, particularly in the prior representation context. The rule, of course, never becomes applicable where the party seeking the attorney's disqualification fails to establish that such party was or is " 'represented' " by the attorney "in a manner giving rise to an attorney-client relationship." (*Civil Service Com.* v. *Superior Court* (1984) 163 Cal.App.3d 70, 77 [209 Cal.Rptr. 159].) Similarly, disqualification is inappropriate even if an attorney-client relationship existed if there is no showing either that the attorney obtained relevant confidential information in the context of the prior representation, or that the prior representation was "substantially related" to the current representation. (*Id.* at pp. 78-80; see also *Elliott* v. *McFarland Unified School Dist.*, *supra*, 165 Cal.App.3d at p. 568.) Finally, and equally applicable where conflicting current representation is concerned, disqualification is unnecessary " 'where the client expressly or impliedly consents to the adverse representation [citation].' " (*Ward* v. *Superior Court*, *supra*, 70 Cal.App.3d 23, 31, quoting *Grove* v. *Grove Valve & Regulator Co.* (1963) 213 Cal.App.2d 646, 652-653 [138 Cal.Rptr. 532].)

---

[6]All further references to rules are to the Rules of Professional Conduct of the State Bar unless otherwise specified.

[7]Rule 3-310 in its current version (as pertinent herein) includes the material formerly found in rules 4-101 and 5-102 and cited by the parties here: "[¶] (A) If a member has or had a relationship with another party interested in the representation, or has an interest in its subject matter, the member shall not accept or continue such representation without all affected clients' informed written consent. [¶] (B) A member shall not concurrently represent clients whose interests conflict, except with their informed written consent. . . . [¶] (D) A member shall not accept employment adverse to a client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment except with the informed written consent of the client or former client."

■ A court confronted with an attorney disqualification motion should proceed with caution in order to avoid hardships on innocent clients where disqualifications are unnecessarily ordered. (*Elliott* v. *McFarland Unified School Dist.*, *supra*, 165 Cal.App.3d 562, 573.) Disqualifications of public counsel can result in increased public expenditures for legal representation, and "there is the potential for a substantially increased call upon an already severely strained tax base." (*People* v. *Municipal Court* (*Byars*) (1978) 77 Cal.App.3d 294, 301 [143 Cal.Rptr. 491].) Where only speculative or minimal benefit would be obtained by disqualification of public counsel, the "dislocation and increased expense of government" is not justified. (*Ibid.*) An additional factor weighing against disqualification without sufficient cause is the potential deprivation to the client of the services of an attorney highly skilled in a particular area of the law, as appears to be the case here where county counsel has a specialized unit which handles dependency matters. (See *Gregori* v. *Bank of America*, *supra*, 207 Cal.App.3d 291, 300.)

In *Castro* v. *Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432 [284 Cal.Rptr. 154], where a public nonprofit corporation rendering defense legal services in dependency matters from several separate divisions was found to have no improper internal adverse interests between the divisions, the Court of Appeal quoted at length from an ethics opinion letter submitted as a trial court exhibit on the issue of conflict of interest rules. In particular, the court relied on the expert's observations as follows:

" 'Because conflict rules mainly deal with *risk* of unethical conduct, arguments about these rules often use words like "may," "might," and "could," usually followed by phrases like "be tempted to." Obviously, such words are highly elastic. They tell us nothing about the appropriate tolerance for risk when measured against the social, professional, and monetary costs of disqualification or of forbidding a particular practice arrangement. We allow many arrangements that tolerate some risk because they also provide social or other benefits and because we are prepared to believe that lawyers take their ethical responsibilities seriously. The question, therefore, is not whether a lawyer in a particular circumstance "may" or "might" or "could" be tempted to do something improper, but whether the likelihood of such a transgression, in the eye of a reasonable observer, is of sufficient magnitude that the arrangement or representation ought to be forbidden categorically.' " (*Castro* v. *Los Angeles County Bd. of Supervisors*, *supra*, 232 Cal.App.3d at p. 1444.)

■ In light of these guidelines, we next examine the extent to which a conservatee may claim an attorney-client relationship with the counsel for his or her conservator, and a consequent right to protection against adverse representation.

## II

■ Since this case arises in the context of a public entity's legal representation, the general rule should first be noted that a public attorney, acting solely and conscientiously in a public capacity, is not disqualified to act in one area of his or her public duty solely because of similar activity in another such area. (*People* v. *Superior Court (Martin)* (1979) 98 Cal.App.3d 515, 521 [159 Cal.Rptr. 625].)[8] The first area of public lawyering to be examined here is that governed by the LPS Act.

■ The legislative intent of the LPS Act, as stated in section 5001, includes the purposes of guaranteeing and protecting public safety, safeguarding individual rights through judicial review, and providing individualized treatment, supervision, and placement services through a conservatorship program for gravely disabled persons. County counsel's primary duty under the statutory scheme is to protect the public interest in public safety (*St. Joseph Hospital* v. *Kuyper* (1983) 146 Cal.App.3d 1086, 1089 [194 Cal.Rptr. 876]), while simultaneously representing the public conservator whose duties require supervision of the care of the conservatee. As we next explain, the adversary system created by the LPS Act, including the roles of the conservator, the county counsel or other attorney for the conservator, and the conservatee's appointed attorney, is intended to facilitate the attainment of these goals.

*Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1] is the watershed case which held that due process guarantees require that "proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act." (*Id.* at p. 235.) Section 5114 of the Act allocates the responsibility for presenting allegations of grave disability (or danger to self or others) to the county's district attorney or, where so designated, county counsel. (See Gov. Code, § 27646.) When conservatorship proceedings are initiated under the LPS Act, county counsel may present evidence supporting an initial certification to show where necessary that the subject person is gravely disabled. (§ 5256.2.) In

---

[8]By contrast, a public attorney may be subject to disqualification where "in the course of his official duties he acquires a conflicting 'personal' interest, or 'personal or emotional involvement,' or 'emotional stake' in the case [citations], or where there is 'intense personal involvement' in his public duties [citation], or where there is 'personal, as opposed to purely professional . . . involvement,' or 'the prosecutor is improperly utilizing the criminal proceeding as a vehicle to aid' his personal or fiduciary interests [citation]." (*People* v. *Superior Court (Martin), supra,* 98 Cal.App.3d 515, 521.) Such a personal stake in a proceeding might result in a lack of the required "evenhandedness" of a public attorney. (*People* v. *Conner, supra,* 34 Cal.3d 141; *People* ex rel. *Clancy* v. *Superior Court, supra,* 39 Cal.3d 740.) Diane has made no such claim of personal bias here.

effect, county counsel is acting as a prosecutor in the civil certification proceedings; in contrast, the proposed conservatee is represented by her own counsel, often the public defender. (§§ 5276, 5365.) If a conservatee seeks rehearing on the conservatorship, for example to show that it is no longer needed, county counsel represents the county and acts as a prosecutor while the conservatee retains the right to a public defender. (§§ 5364, 5365.) Similarly, if the conservator seeks to reestablish the conservatorship upon its expiration, the same adversary procedure is allowed. (§ 5361; see *Conservatorship of Delay* (1988) 199 Cal.App.3d 1031 [245 Cal.Rptr. 216].)

As explained in California Conservatorships and Guardianships (Cont.Ed.Bar 1990) sections 15.88-15.89, pages 871-873, the general powers granted to Probate Code conservators under Probate Code sections 2400-2586 are granted to LPS conservators, along with additional specified powers ordered by the court pursuant to Probate Code section 2590 et seq. (§§ 5357, 5358, 5360.) Along with such powers go the duties and responsibilities of Probate Code conservators.[9] In addition, an LPS conservator has the power to designate placement of the conservatee pursuant to section 5358. Under section 5355, a person or agency whose "interests, activities, obligations, or responsibilities" (*ibid.*) conflict with those of the conservatee is ineligible for appointment as conservator.

In structuring the LPS Act duties and responsibilities of public attorneys and public conservators in this way, the Legislature evidently did not believe serious conflict problems would arise that would create improper adverse interests between a conservator and the public official who acts as his or her attorney in the course of "prosecuting" the matter against the proposed conservatee. Instead, the Legislature dealt with the conflict of interest issue by ensuring the conservatee's right of separate representation in the proceedings, usually by a public defender. (§ 5365.) This protective scheme of the LPS Act, as judicially interpreted, provides an administrative means to balance the subjective wishes and objective needs of the conservatee.

■ Similarly, the role of county counsel in dependency proceedings must be understood in light of the paramount concern of the juvenile court in dependency matters: the welfare of the minor. (See *In re Malinda S.* (1990) 51 Cal.3d 368, 384-385 [272 Cal.Rptr. 787, 795 P.2d 1244], which states,

[9]A concurring opinion in a decision issued by this court, *In re Sophia B.* (1988) 203 Cal.App.3d 1436, 1440-1441 [250 Cal.Rptr. 802] (conc. opn. of Woodworth, J.), suggests a conservator is under a fiduciary obligation to act in the best interests of the conservatee (citing Cal. Conservatorships (Cont.Ed.Bar 1983) § 6.2, p. 283; superseded by Cal. Conservatorships & Guardianships (Cont.Ed.Bar 1990) § 10.2, pp. 462-464). While this is generally a correct statement of the law, in the LPS context the analysis fails to account for the adversary structure and the involuntary nature of the LPS proceedings.

"Dependency proceedings are civil in nature, designed not to prosecute a parent, but to protect the child. . . . [Citations.]") Nevertheless, the parent of a dependent child (or in some cases the dependent child) is entitled to the appointment of counsel to protect his or her individual rights. (§§ 316, 317.) By contrast, county counsel or the district attorney is authorized to represent the petitioner Department in its investigative and social service functions. (§ 318.5.)

### III

With this statutory framework in mind, we examine the record for any support it may afford to the general challenges made by Diane to the extent of county counsel's activities in her cases. At the hearing before the juvenile court, deputy county counsel explained its position that the issues in a dependency proceeding are defined by the dependency statutes, and the information gained in Diane's conservatorship was not shared with the dependency attorneys. County counsel further represented to the juvenile court its dependency division and the litigation office "downtown," which handles conservatorships, were separate and distinct offices that do not share cases. Deputy county counsel emphasized it was on "the opposing side" from Diane in the conservatorship proceeding, such that its position in the dependency matter was not in conflict.

In contrast, Diane continues to claim that the positions taken by county counsel in both areas of its activity are contradictory and adverse to her interest. In part, she relies on the analysis of the concurring opinion in *In re Sophia B., supra*, 203 Cal.App.3d at pages 1440-1441 (conc. opn. of Woodworth, J.), which discussed the existence of potential conflict between two county agencies under similar facts. That concurring opinion makes the unsupported assertion that, with reference to a parent under conservatorship whose child is a dependent of the juvenile court, the conservator and the Department "have potentially conflicting duties with respect to the termination of . . . parental rights . . . ." (*Id.* at p. 1440.) It seems reasonable to assume that in many cases, those duties might not conflict, as where it is clear termination of parental rights serves the best interests of both a sick parent, unable to withstand the stresses of parenting, and the child. Moreover, the mere potential of conflicting duties is not adequate grounds for attorney disqualification in light of all the other applicable considerations inherent on these facts. (See *Castro* v. *Los Angeles Bd. of Supervisors, supra*, 232 Cal.App.3d at p. 1444.)

Neither do we find the majority opinion in *In re Sophia B., supra*, 203 Cal.App.3d 1436, 1440 to be dispositive of the issue presented in this case. In *Sophia B.*, this court on procedural grounds declined to reverse a judgment

declaring a minor free from her parent's custody and control (Civ. Code, § 232), where the only challenge raised by the parent on appeal was an allegedly improper order denying her motion to disqualify county counsel from representing the Department; her motion had asserted the office of county counsel represented both the Department in the dependency matter and the parent's conservator. We found no basis to conclude the parent was prejudiced by county counsel's representation of the Department at a time when county counsel also represented the parent's conservator. This procedural context differs from that presented here, where the Department has timely appealed the order of disqualification and has squarely presented the conflict of interest issue.

In short, Diane's arguments fail to recognize that the issues differed materially in the two proceedings affecting her, and required different legal analysis and emphasis. Moreover, in each case, county counsel took its legal position as a "prosecutor," while Diane at all times had the assistance of appointed counsel to assist her in defending her interests.[10] This record does not support Diane's contention that by virtue of her conservatorship, she enjoys a constructive attorney-client relationship with her conservator's designated attorney, county counsel. As explained above, it is more correct to say Diane as a conservatee is in an adversary relationship with county counsel. A conservatee incurs no prejudice by that fact because of the overriding statutory duties imposed on her conservator to protect her interests as professionally evaluated, and because of her rights to appointed counsel in the proceeding. There is no basis in the record for Diane to claim that one division of county counsel has improper access to confidential information obtained by another such division, based on any fictional "prior representation" or "current representation" of her by one of those offices. Although standards of attorney disqualification "are often based on the *potential* that continued involvement by the attorney will cause harm to a client or former client" (*In re Sophia B., supra*, 203 Cal.App.3d 1436, 1439), the necessary factual predicate of an existing or former attorney-client

---

[10]The difference in the nature of the two county agencies involved here renders distinguishable the facts in *Civil Service Com.* v. *Superior Court, supra*, 163 Cal.App.3d 70. There, this court issued a writ of mandate compelling the trial court to order county counsel disqualified from further participation in a case in which the county sued the county civil service commission on a matter in which county counsel had given prior legal advice to the commission on the matters at issue in the litigation. Our decision in part was based on the quasi-independent nature of the commission, which had independent authority over matters within its jurisdiction. (*Id.* at pp. 75-78.) In the case we decide today, there is no contention that either the Department in the dependency matter or the public conservator has independent authority such that it may not be considered a constituent public agency of the county. As noted in *Ward* v. *Superior Court, supra*, 70 Cal.App.3d 23, 32, normally a county counsel has only one client, namely that county.

relationship must first be shown for the standards to apply. No such showing was made here.[11]

Nevertheless, on the record before us, we cannot resolve the question of whether another case might present facts which give rise as a matter of law to some kind of attorney-client relationship between county counsel and a conservatee. (See *Ward* v. *Superior Court, supra,* 70 Cal.App.3d at p. 31.) For example, if a conservatee's legal representation by appointed counsel (such as the public defender) is deemed to be limited to the scope of particular hearings which were concluded, as opposed to an ongoing retainer of some kind, the adverse character of county counsel's relationship with the conservatee might be lost. Similarly, we do not know whether there could be circumstances in which a conservator could receive confidential information from the conservatee which would then actually be passed on to county counsel for use in the conservatorship proceeding, thus giving rise to some form of conflict as it applies to county counsel's role in dependencies.

Although the record before us does not present such a difficult situation, it does demonstrate that county counsel is sensitive to the potential for conflict based on access to confidential information and has established procedures which forbid the transmission of confidential information between attorneys representing the Department and attorneys for the conservator. (See *Castro* v. *Los Angeles County Bd. of Supervisors, supra,* 232 Cal.App.3d 1432, 1442, which states, "It is not to be assumed hypothetically, in the absence of facts, that [public agency] attorneys will act to violate their client's confidence or to compromise their legal interests. The structures of the organization reinforce this ethical duty, which is well known to all attorneys.") We commend county counsel for its professional approach and urge its continued vigilance over the problems of adverse representation. However, we leave for another day the question of how to resolve the issue of adverse representation in this context if the fact of such confidential communication occurs. We are satisfied the facts before us do not present an actual conflict nor do they create the appearance of such conflict.

---

[11]Here, the juvenile court relied on not only a finding of actual conflict, but also a finding that there was an appearance of impropriety in county counsel's different roles. In *People* v. *Lopez* (1984) 155 Cal.App.3d 813, 823-824 [202 Cal.Rptr. 333], this court emphasized the importance of the use of objective criteria in ruling on attorney disqualification matters, because "[t]he appearance of impropriety . . . is a malleable factor having the chameleon-like quality of reflecting the subjective views of the percipient. [Citations.] Judicial decision-making should not turn on the psychological or philosophical perceptions of those involved." As explained above, we have found no actual conflict between county counsel's two duties of representation, nor does any "appearance of impropriety" require disqualification in this matter.

## IV

 The juvenile court further erred when it failed to recognize the importance of the 14-month delay between the first appearance of county counsel in this matter, at a time when the conservatorship was already in place, and Diane's first objection to that representation. A client may expressly or impliedly consent to and waive complaints about adverse representation. (*Ward* v. *Superior Court, supra,* 70 Cal.App.3d 23, 31; see *River West, Inc.* v. *Nickel* (1987) 188 Cal.App.3d 1297, 1304-1310 [234 Cal.Rptr. 33].) Diane argues on appeal that county counsel's failure to raise the defense of laches at the hearing on the oral motion to disqualify counsel precludes the Department from asserting laches or prejudice as a ground for reversal of the order of disqualification. County counsel's failure to raise such a defense is understandable in light of the surprise nature of the motion, thought up by Diane's attorney as he drove into the parking lot, and the expedited nature of the juvenile court proceedings. The Department made its position clear to the juvenile court that it resisted the motion for disqualification and has represented to this court in its briefs on appeal that county counsel is its attorney of choice. Moreover, Diane has cited no authority to support her position that this court may not consider the issue of prejudice de novo. We have found there was no actual conflict of interest here; we also find the Department has not waived its right to have that fact recognized by this court.

In *Civil Service Com.* v. *Superior Court, supra,* 163 Cal.App.3d 70, 84, this court acknowledged the undeveloped state of the law regarding conflict of interest questions as they affect government attorneys. Our decision in that case was "but one small step in what should be a continuing process to develop standards of conduct which accurately reflect the realities of practice in the private and public sectors." (*Ibid.*) The decision we issue today is another application of rules developed in the private sector which do not squarely fit the realities of public attorneys' practice. (See also *Gregori* v. *Bank of America, supra,* 207 Cal.App.3d 291, 300-302.) The juvenile court's ruling in this case was made on an oral motion, without benefit of notice or points and authorities, without due consideration of the ramifications of the decision. No factual or legal showing supported the motion.Consequently, the ruling constituted an abuse of discretion.

## DISPOSITION

The order is reversed.

Wiener, Acting P. J., and Rodriguez, J.,* concurred.

A petition for a rehearing was denied December 9, 1991, and respondent's petition for review by the Supreme Court was denied March 12, 1992.

---

*Judge of the Municipal Court for the San Diego Judicial District sitting under assignment by the Chairperson of the Judicial Council.